No. 15,404.

WOODS *v.* THE PEOPLE.
(142 P. [2d] 386)

Decided October 11, 1943.   Rehearing denied November 1, 1943.

Mr. JOHN F. MUELLER, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

Oscar Woods, plaintiff in error, reference to whom hereinafter will be as defendant, was charged with the crimes of grand larceny and larceny from the person in an information containing two counts.

A jury found him guilty of larceny from the person as charged in the second count, and thereon he was sentenced to a term of not less than nine years and not more than nine and one-half years in the state penitentiary. Seeking to reverse this judgment he has sued out a writ of error, asking that the writ be made to operate as a supersedeas and that the cause be finally determined on the merits on the supersedeas application. The Attorney General has joined in the latter request, and we elect to proceed accordingly.

The complaining witness was one Lewandowski, a resident of Wyoming, who, prior to November 15, 1942, had spent a couple of weeks vacation in Denver. The facts as related by Lewandowski, stated briefly, are as follows: On the evening of said November 15, he made arrangements to return to his home in Wyoming; that late in the afternoon he had dinner at the Manhattan restaurant; that he returned to his hotel room, where he packed his bags and counted his money—$381, composed of five new fifty-dollar bills, six new twenty-dollar bills, a ten-dollar bill and some small change; that he then went to the bus depot at 17th and Welton streets where he made inquiries concerning the checking of his baggage, and at which time he purchased a ticket to Casper, Wyoming, for the sum of $7.10, presenting the ten-dollar bill in payment therefor, and that this was the last time he opened his wallet; that after paying for his ticket, the wallet contained five fifty-dollar bills, the six twenty-dollar bills and a dollar bill; that in it also was a book of three-cent stamps, four of which had been

removed; that since he still had about an hour before the departure of the bus he decided to go to Sarconi's Billiard Parlor to bid a friend goodbye; that upon his return to the station to board the bus he tried to check another bag and was refused; that he left his coat and bag in the station and went out on the sidewalk where he took out his wallet with the intention of putting his ticket in it, but for some reason did not do so and returned the wallet to his pocket; that he reentered the bus station, picked up his belongings and walked out again to board the bus; that he noticed the defendant who quickly turned his face away; that he again noticed defendant standing directly behind him before he boarded the bus; that he, Lewandowski, stood in line for about two minutes; that after he boarded the bus and had put his bags away, he seated himself and reached for his wallet and found it gone; that he immediately got off the bus and walked to the police station where he reported the matter and was shown some pictures, one of which he identified as being that of the defendant; that a short time thereafter he accompanied police officers to a section of the city known as Five Points; that they parked their car near the Glenarm Y.M.C.A. and waited until about 1:30 a.m.; that about that time a man resembling the defendant was seen to enter the Y.M.C.A.; that three of the officers followed him to his room, where they were admitted by him; that they searched him and found $19 in his wallet; that in a dresser drawer they found a book of three-cent stamps, four of which had been taken out; that they also found two letters in the room in his hand writing, written to two persons in Gary, Indiana, in which he stated he was going to pay them what he owed them soon; that the officers were about to take him to police headquarters when he asked if he might change his socks; that he was granted permission to do so; that in taking his socks out of a bag the officers saw him remove something which he tried to hide under the bed clothes; that upon investigation

they found it to be some gambling books in which were secreted five new fifty-dollar bills and five new twenty-dollar bills; that defendant thereupon was immediately taken to police headquarters; that when asked where he obtained this money he replied that he won it in gambling in Gary, Indiana. He admitted being at the bus depot on the night of November 15th. He was detained in jail, duly informed against, tried to a jury and found guilty, as already noted.

Defendant presents ten specifications of points for reversal, of which we consider the following: 1. That there was no proof of the corpus delicti. 2. That the court erred in admitting in evidence the following exhibits: (A) Defendant's wallet containing the $19 in currency; (B) the book containing the $350 in currency; (C & D) books of stamps; (E & F) the two letters written by defendant and addressed to persons in Gary, Indiana; (G) letter from defendant to Ben Bloom, a Denver jeweler.

1. We think the above resumé of the facts as disclosed by the record is ample proof of the corpus delicti. No good purpose would be served by an academic discussion as to what its component elements are. A comprehensive review of the subject will be found in *Ausmus and Moon v. People,* 47 Colo. 167, 107 Pac. 204. See, also, *Lowe v. People,* 76 Colo. 603, 234 Pac. 169. While these are homicide cases, the rule therein stated is made applicable to other crimes, e.g., in larceny, proof of "property missing" and "somebody's criminality as the source of the loss." *Ausmus and Moon v. People, supra,* p. 178. "The first two [elements of homicide] constitute what is known in law as the corpus delicti * * * That proof may be made by any legal evidence, the same as proof of other facts." *Lowe v. People, supra.* "The corpus delicti in larceny is constituted of two elements: (1) that the property was lost by the owner; and (2) that it was lost by a felonious taking." 32 Am. Jur. 1033, §121. In this state the corpus delicti may be

proved by circumstantial evidence (*Ausmus and Moon v. People, supra; Bunch v. People,* 87 Colo. 84, 285 Pac. 766), provided such circumstantial evidence is sufficiently clear to exclude any reasonable hypothesis of innocence. *Beeler v. People,* 58 Colo. 451, 146 Pac. 762; *Conferti v. People,* 79 Colo. 666, 247 Pac. 1065; *Allison v. People,* 109 Colo. 295, 125 P. (2d) 146. See, also, *Cobianchi v. People,* 111 Colo. 298, 141 P. (2d) 688. All of these requirements were fulfilled in the instant case, as appears from the record, and a case of circumstantial evidence is presented which was properly submitted to the jury. Counsel for defendant expressly approved the instructions of the court, which are full and complete, and we are of the opinion that the jury was justified in returning its verdict of guilty. The evidence excludes any reasonable hypothesis of innocence.

Since defense counsel concedes that the alleged impropriety of the admission of the exhibits was largely contingent upon the establishment of the corpus delicti, and since the cases upon which he relies to sustain his objection to the admission of the exhibits are limited to a situation where there is only one, or possibly two, of the circumstances present here, we deem it unnecessary to consider each exhibit separately. It may be admitted there are a few minor discrepancies in Lewandowski's testimony at the trial, and the statements he made in his deposition shortly after defendant's arrest, but they are wholly immaterial.

We find no reversible error in the record.

The judgment is affirmed.