## TERRITORY OF HAWAII *v.* SABLE HALL.

### NO. 2786.

ARGUED MAY 1, 1952.                    DECIDED MAY 14, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

The defendant was indicted for the crime of larceny in the first degree, to wit, that she did take $163, the property of one Boyce Plyler. Defendant was convicted before a jury and sentenced to ten years in prison.

On April 13, 1949, Plyler and another sailor in the United States Navy arrived in Honolulu and registered at a hotel; at that time Plyler had $170 in eight $20 bills in his wallet in his pocket and $10 in his front shirt pocket. Subsequently the sailors went to a chop suey place on Hotel street and Plyler spent a portion of the $10 he had in his shirt pocket. After the sailors left the chop suey place and walked down the street, Plyler was stopped by the defendant who asked him if he wanted a woman; this was about 2:00 o'clock a.m. Defendant grabbed his arm and started to play with his privates; one of the defendant's hands was inside his trousers and the other in his left front trouser pocket. She told Plyler to go down the street and she would follow. As Plyler walked down the street he noticed that defendant walked the other way with another couple. Becoming suspicious, he reached for his wallet and found it empty. He and his companion then ran down the alley, caught the defendant and asked her to give him back his money. A scuffle ensued and Officer Guigni ran over, took the persons into custody and brought them to Beretania street where Officer Schwartzman was on duty. The two officers and the victim then noticed that the defendant had a bulge in her mouth; when asked what she had in her mouth she did not answer but bent over and removed something green therefrom. He asked her to open her hand and

he recovered $163 from the defendant's hand, consisting of eight $20 bills and three $1 bills. Defendant was taken to the police station and charged with larceny in the first degree.

The first assignment of error is that the court committed error in questioning the prosecution's witness, Boyce Plyler, after both counsel had finished their questions of this witness.

After Plyler had finished testifying the court asked a few questions as to the location and content of his wallet before he met the defendant and asked him to show the jurors where the defendant's hands were when she "felt him up." The witness demonstrated that one of the defendant's hands was inside his trousers and the other in his left front pocket, and that he had put his wallet in his left front pocket. The examination was brief and to the point and, so far as is shown by the record, there was no unfairness in the judge's attitude or in the form of his questions.

The general rule is that a trial judge has the right to question a witness to elicit facts or clarify evidence as long as this is done in a fair and impartial way and is necessary to bring out the truth and facts essential to a just verdict.

In *Beal* v. *State*, 138 Ala. 94, 35 So. 58, the court in discussing this question said: "It is always permissible for the Court, and its duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect — whether beneficial or prejudicial to the one party or the other. The development and establishment of the truth is its province and duty."

In *Dutton* v. *Territory*, 13 Ariz. 7, 108 Pac. 224, the court in considering a case where the trial judge had participated in extensive interrogation of the witnesses, said: "It was not only the right, but the duty of a trial judge to

question witnesses to bring out material points not made clear by counsel * * *." It stated further: "In this regard he has wide latitude and discretion, the exercise of which discretion will not be reviewed on appeal except in case of abuse thereof."

*Hargrove* v. *United States,* 25 F. (2d) 258, goes very far indeed in permitting the trial judge not only to ask questions but to comment on certain phases of the case where the questions were intended to bring out the full facts to the jury.

*Territory* v. *Kekipi,* 24 Haw. 500, held that a trial judge's questions were justifiable to throw a light on obscure testimony where he did not intimate an opinion on the facts in so doing.

There are literally hundreds of other cases to the same effect.

It is obvious that in the instant case the trial judge did not show any bias or intimate his opinion as to the guilt or innocence of the defendant in his questions.

The case of *Territory* v. *Van Culin,* 36 Haw. 153, relied upon by defendant, bears little or no resemblance to the case at bar. In that case the court interrupted counsel on many occasions, asking argumentative questions and showed he was prejudiced against the cause of the defendant and, as the court said: "The examination of the defendant by the trial judge is too extensive to permit its transcription here. However, on every occasion when the trial judge took over the defendant as a witness, it is clear from the record that the court's examination was an interruption of the orderly development of the case by counsel. * * * In the course of these interruptive examinations, some of the questions were improper and may be characterized as argumentative. It is stated by counsel for the defendant, and not denied by the appellee, that the trial judge exhibited an unfriendly attitude towards the defendant * * *."

As pointed out, the examination of the witness in the present case was by questions propounded by the judge after both parties had finished the examination of the witness and showed no prejudice and were asked to clear up and illustrate certain points not too clearly brought out in the testimony.

The other ground of alleged error was stated in several forms; these errors claimed by the defendant may be briefly stated: that the prosecution was not entitled to introduce evidence of possession by the defendant of goods alleged to have been stolen until the corpus delicti had been proved; that until the Territory had made out a prima facie case of larceny, which was for the determination of the court, evidence tending to connect the defendant with the commission of the crime was not admissible.

There is not much dispute that evidence of mere possession of stolen property cannot be admitted against the defendant without a showing of the corpus delicti, namely, that such property was stolen.

This court, in the recent burglary case of *Territory* v. *Makaena,* 39 Haw. 270, held that the rule that unexplained possession of stolen property was prima facie evidence of guilt does not become *operative* until it is shown by competent evidence that the property had been stolen. This court also set out in that case that the corpus delicti need not be proved by direct and positive evidence but may be proved by circumstantial evidence.

In the instant case there is ample circumstantial evidence to make out a prima facie case of the corpus delicti. We need not review this evidence in detail as sufficient facts have been set out *supra.* To repeat some of the evidence: the testimony that the complaining witness had eight $20 bills in his wallet in his left hand pocket and the change from $10 after he and his friend had eaten chop suey; that the defendant had her hand in his left pocket and inside his

trousers for some five or ten minutes; that after she told him to go down the alley, that she would follow him, he saw her going in the other direction; he felt in his pocket, found his money missing, chased and caught the defendant; that police officers came up and recovered from the defendant eight $20 bills and three $1 bills which she had in her mouth. This is sufficient to make a prima facie case of larceny.

*Woods* v. *People,* 142 P. (2d) 386 (Colo.), was a case where the facts to establish the corpus delicti were somewhat similar to the instant case. The evidence was that immediately before the prosecution's witness discovered the loss of his wallet containing a specific number of described bills and stamps, he had seen defendant standing behind him; that the bills and stamps were found in defendant's possession immediately thereafter; this evidence presented a case for the jury and justified conviction of larceny from the person. The court said that the corpus delicti may be proved by circumstantial evidence provided such circumstantial evidence is sufficiently clear to exclude any reasonable hypothesis of innocence.

In this case, as in many cases, the evidence offered to prove corpus delicti tends also to show the guilt of the accused. The authorities are clear that it is not essential that the corpus delicti should be established by evidence independent of that which tends to connect the defendant with the perpetration of the crime; the same evidence which tends to prove one may also prove the other, so that the corpus delicti and the guilt of the defendant may stand together inseparably on one foundation of circumstantial evidence. (32 Am. Jur. 1046, 1047, and cases and annotations cited in note 19 on page 1047.)

The cases cited by the defendant, the one upon which he mainly relied being *Sanders* v. *State of Alabama,* 52 So. 417, are readily distinguishable. The only evidence of the

corpus delicti in the *Sanders* case was that certain goods either at one time forming part of the stock in trade of a merchant or goods like them were found in the possession of the accused without anything to show that they were stolen or were not sold in the due course of trade by some employee of the establishment (of which there were eight engaged in selling goods.)

Judgment affirmed.

*G. Y. Kobayashi* (also on the brief) for plaintiff in error.

*R. E. St. Sure,* Assistant Public Prosecutor (*A. R. Hawkins,* Public Prosecutor with him on the brief), present but argument not required by court.