No. 18,481.

Kenneth F. Lee *v*. People of the State of Colorado.

(332 P. [2d] 992)

Decided December 15, 1958.

Mr. H. R. Harward, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. John W. Patterson, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

Plaintiff in error, defendant below and referred to herein as defendant, was, upon trial before a jury, convicted of the offense of "larceny of a motor vehicle."

The charging part of the information is largely in the words of the statute:

"Any person who without the consent of the owner, shall take, use, operate or remove or cause to be taken, used, operated or removed from any garage, stable, or other building or place, or from any place or locality on a private or public highway, park, parkway, street, alley, lot, field or inclosure, an automobile or motor vehicle, and who shall operate or drive the same or cause the same to be operated or driven for his own profit, use or purpose, shall be deemed guilty of larceny and shall be punished accordingly." — C.R.S. '53, 40-5-10.

The People offered in evidence the signed statement of the defendant, as follows:

"On October 3rd, 1955 at approximately 12:30 A.M. I appeared at the gates of the 'Colorado Auto Auction' and after some time had the night watchman open the gates which were locked and admit myself and a dealer with 2 new cars belonging to the dealer. I told the night watchmen that I was going to use a car and wanted to know if he had a license I could use. At no time did I verbally represent myself as an automobile dealer or make the statement that I was the owner of the automobile or an authorized representative of the company in any way. The watchmen admitted me to the office of the 'Colorado Auto Auction' and gave me permission to use a plate which was a 1955 plate from Virginia, license number 928-710. I drove to Denver and then to Idaho Springs and back. I stopped a night Police Patrol at Littleton and asked directions to the 'Colorado Auto Auction.' It was about 3:00 A.M. or 3:30 A.M. on the morning of October 3rd and I stopped at the 'Colorado Auto Auction' and again had the night watchmen come to the gate and asked him if he would exchange the Virginia license for a Colorado plate. He went to the office and got Colorado dealer's license A/1/818 and gave to me. He refused the Virginia plate telling me to return both license when I returned the Automobile. I then started

just driving around Denver and drinking and decided to go for a ride. I proceeded out hiway 87 or 85 to Pueble where I was apprehended by Sheriff John Krutka while sleeping off a drunk about 20 miles out of Pueblo in the foothills. Before I made the statement on the Back of this page I was advised of my rights even though I knew my rights and I gave the said statement without threats or promises from anyone any of my own free will and the statement I gave was in my own hand writing and is the truth to the best of my knowledge.

"Kenneth F. Lee
"Witnesses    Lee Elling    Deputy Sheriff
            William Maraggos    Chief Investigator"

The People also called as a witness one Rafugio Gonzales, night watchman, employed by Colorado Auction Company, who each night, during the hours 8:00 P.M. to 6:00 A.M., was in complete and exclusive charge and possession of the lot where hundreds of cars, including the car in question, were stored pending sale. This lot had an area of five acres, enclosed with an Elcar wire fence twelve feet high, with only one gate for ingress and egress. Gonzales had the keys to the lock on the gate; he opened the gate to let cars in and out; he permitted persons other than owners to take cars out.

Gonzales' testimony to a large extent corroborated the facts set forth in the statement of the defendant. He opened the gate so the defendant could get in, gave him the Virginia license plate to put on the car, unlocked the gate so he could drive away (Gonzales says so Lee could go to the Western Union to pick up some money); when defendant returned hours later, Gonzales again opened the gate and gave defendant a Colorado license plate to put on the car. There was no other testimony as to how the defendant obtained possession of the car.

Testimony of the owners, officers and other employees of the Colorado Auto Auction dealt with the ownership of the car, the manner of doing business, and the duties and scope of authority of Gonzales.

■ The People's evidence failed to show an unlawful taking by the defendant. On the contrary, all of the evidence shows that Gonzales, who was in possession of the car, delivered it to defendant, furnished the Virginia license plate so the defendant could drive the car, and later, in order to better protect the defendant in driving the car, gave him a Colorado dealer's license plate to attach to the car. There is no suggestion in the record that possession was gained by trickery, deceit or misrepresentation of any kind; in fact, the defendant in his signed statement, *introduced in evidence by The People,* asserted in no uncertain terms that he had done no wrong; that he had not stolen the car, and that it was delivered to him and license plates furnished for his convenience in driving it.

C.R.S. '53, 40-5-2, states that:

"Larceny is the felonious stealing, taking and carrying, leading, riding or driving away the personal goods or chattels of another. * * *."

In *Woods v. People,* 111 Colo. 448, 142 P. (2d) 386, this court quoted with approval the following:

"The corpus delicti in larceny is constituted of two elements: (1) that the property was lost by the owner; and (2) that it was lost by a felonious taking." — 32 Am. Jur. 1033, §121.

We quote with approval the balance of said section 121:

" * * * It is, of course, necessary that the corpus delicti be established, since it is clearly not permissible that anyone be adjudged guilty until it is shown that a larceny has been committed; and unless the state has shown, prima facie, that a larceny has been committed, the defendant is not put on proof."

■ Clearly, there was no "taking," felonious or otherwise. The property was delivered to defendant by the person in charge thereof for his use and convenience.

The motion for a directed verdict of not guilty should have been granted.

The judgment is reversed and the cause remanded with directions to discharge the defendant.