**STATE of Utah, Plaintiff and Respondent,**

v.

**Marc CHESNUT, Defendant and Appellant.**

**No. 16945.**

Supreme Court of Utah.

Nov. 20, 1980.

---

**8.** As provided by U.C.A., 1953, 17–21–20.

**9.** Pursuant to the provisions of U.C.A., 1953, 75–2–901.

**10.** See U.C.A., 1953, 57–1–6 and 57–3–2.

**11.** See U.C.A., 1953, 70A–9–302(5)(a).

**12.** See U.C.A., 1953, 70A–9–302(5)(b).

Robert J. Schumacher of Utah County Legal Defenders Association, Provo, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Defendant appeals from his conviction by a jury of the crime of theft of an operable motor vehicle, a felony of the second degree. He was sentenced to serve a term provided by law for conviction of a felony of the third degree. The judgment is reversed, and the cause remanded for a new trial. All statutory references are to Utah Code Annotated, 1953, as amended.

At approximately two-thirty in the morning in June in Lehi, Utah, a police officer observed defendant pushing a motorcycle, more specifically identified as a "dirt bike," down the street of a residential neighborhood towards defendant's home. The police officer, who had known defendant all his life, inquired what he was going to do with the motorcycle. Defendant responded that he was going to ride it in a field adjacent to the roadway where they were conversing. Due to the noisy nature of a dirt bike, the officer informed defendant that he could not ride at that hour. The officer further observed defendant appeared to have been drinking intoxicants.

Defendant further informed the policeman that a friend and neighbor, Kenny Covington, owned the vehicle. The officer then proceeded to the nearby residence of Covington and after some time succeeded in arousing the occupants to inquire if defendant had permission to use the vehicle. Covington replied: "No, not tonight." While the police were conversing with Covington, defendant implored him to modify his answer as to permission.

Thereafter, defendant was placed under arrest. According to the police, defendant claimed he took the bike because Covington owed him $300.00. Defendant denied making such a statement. The evidence further indicated the motorcycle was of the type that started without an ignition key, and there was sufficient gas in the tank to run the vehicle approximately two blocks. Defendant testified that he intended to take the bike to his home to fill it with additional gas and then ride it in the field and around the school ground in the neighborhood. He testified his intention was to return the motorcycle after he had ridden for an hour or so. Defendant claimed he had attempted to awaken Covington to ask permission, but no one had responded to his knocking at the door. Covington and defendant resided on the same street, approximately one block apart.

Covington testified that his bike was not licensed to be operated on the highway, it was to be used as an off-the-road vehicle. He further testified that he had known defendant all of his life, and they were friends. Further, he had previously permitted defendant to ride the vehicle. Specifically, at the time he purchased the bike he had taken it to defendant's home to show it to him, and defendant had ridden it. On the day prior to this allegedly criminal incident, the two discussed the bike and defendant reiterated his interest in riding it. Covington informed defendant he would pick him up someday, and they would go to the sand pit to ride. Covington further acknowledged he was indebted to defendant in the sum of approximately $100.00.

Based on the foregoing evidence, the jury found defendant guilty of theft of an operable motor vehicle in violation of Sections 76–6–404 and 76–6–412(a)(ii).

On appeal defendant contends that the State did not establish the corpus delicti for auto theft by its failure to present independent, clear, and convincing evidence, showing defendant's intent permanently to deprive.

Section 76–6–404, provides:

"A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof."

Section 76–6–401(3) provides:

" 'Purpose to deprive' means to have the conscious object:

(a) To withhold property permanently or for so extended a period or to use under such circumstances that a substantial portion of its economic value, or of the use and benefit thereof, would be lost; or ... " [1]

Defendant argues that since an element of the crime of theft is an intention permanently to deprive an owner of his property, the state must present evidence specifically demonstrating the defendant had such intention in order to establish the corpus delicti.

In *State v. Knoefler* [2] this Court stated: "... the requirement of independent proof of the corpus delicti requires only that the State present evidence that the injury specified in the crime occurred, and that such injury was caused by someone's criminal conduct...."

This Court rejected the contention that the corpus delicti of a crime includes the total proof of all elements necessary to convict defendant of the crime charged in *State v. Cazier.* [3] This Court explained the traditional and practically universal concept of the term "corpus delicti," which means literally the body of the crime, in regard to proof of crime, refers only to evidence that a crime has been committed.

In regard to the specific crime of theft, the corpus delicti has been described as composed of two elements: (1) one entitled to possession of the property has been deprived of possession; (2) the deprivation has been accomplished by a felonious taking. [4] Evidence of the property having been taken from the possession of the owner without his knowledge or consent is evidence of both of the elements of the corpus delicti. [5] Covington, the owner, testified the dirt bike was taken without his knowledge or consent; from this fact, it is a reasonable inference that the taker intended to deprive the owner of possession. [6] Thus, there was sufficient evidence to establish the two elements of the corpus delicti of the crime of theft. [7]

Defendant contends the trial court committed prejudicial error by its refusal to instruct the jury on the lesser included offense of joyriding as set forth in Section 41–1–109. With this contention we agree.

Section 76–1–402(4), provides:

"The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of

1. The state proceeded only under this subdivision, and the jury was so instructed. Subdivision (3)(b) was neither invoked nor applied by the prosecution to the testimony of the police that defendant had stated he took the bike because Covington owed him money.

2. Utah, 563 P.2d 175, 176 (1977).

3. Utah, 521 P.2d 554, 555 (1974).

4. *State v. Lewis,* 248 Or. 217, 433 P.2d 617, 618 (1967).

5. Id.

6. *People v. Quisenberry,* 151 Cal.App.2d 157, 311 P.2d 99, 103 (1957).

7. Also see: *State v. Aten,* 203 Kan. 920, 457 P.2d 89 (1969); *Lee v. People,* 138 Colo. 321, 332 P.2d 992 (1958); 50 Am.Jur.2d, Larceny, Sec. 141, pp. 320–321.

the offense charged and convicting him of the included offense."

In *State v. Dougherty*[8] this Court stated: "... When an appellant makes an issue of a refusal to instruct on included offenses, we will survey the evidence and the inferences which admit of rational deduction, to determine if there exists reasonable basis upon which a conviction of a lesser offense could rest...."

■ In *Dougherty*, this Court observed there were three situations in which the problem of lesser included offenses were frequently encountered. The third situation outlined therein is applicable to the instant case, viz., a case, where the elements of the greater offense include all the elements of the lesser offense, because by its very nature the greater offense could not have been committed without defendant having the intent in doing the acts, which constitute the lesser offense. Instructions on the lesser offense may be given because all elements of the lesser offense have been proven. Such an instruction may properly be refused if the prosecution has met its burden of proof on the greater offense, and there is *no* evidence tending to reduce the greater offense. If there be *any* evidence, however slight, on any reasonable theory of the case under which defendant might be convicted of a lesser included offense, the trial court must, if requested, give an appropriate instruction.

■ In *State v. Cornish*[9] this Court ruled the offenses of theft of an operable motor vehicle and joyriding both have as common elements, an unauthorized use of a vehicle, with an intent to deprive the owner of possession. If the crime of theft be charged, the prosecution has the burden to prove, beyond a reasonable doubt, the additional element of intent to deprive under the circumstances set forth in Section 76–6–

401(3). If under the circumstances of the case, there is either an issue of whether the prosecution has sustained this burden or the defendant presents evidence under his theory which negates the factors in Section 76–6–401(3), the issue of defendant's intent should be submitted to the trier of fact with the requested instruction on the lesser included offense of joyriding.

■ Under defendant's theory of the facts as set forth in the evidence there was a rational basis to acquit him of the crime of theft and convict him of the lesser included offense of joyriding; he was, therefore, entitled to his requested instruction.

Finally, defendant contends the trial court erred by sustaining an objection of the prosecution in regard to defendant's cross-examination of Kenny Covington. Specifically, defendant was seeking to elicit testimony concerning Covington's motive in testifying as he had. Covington testified that the Sunday prior to trial he had talked with police officer, Evans, both in a police car and at the County Jail. The officer told Covington that if he did not tell the truth, he would be the one who went to jail. Defense counsel then queried whether Covington had already been taken to jail, and whether he had been arrested for another offense. The trial court citing Rule 45, U.R.E.,[10] sustained the objection of the prosecution.

According to defendant the objective of his line of questioning on cross-examination was to reveal the relationship between Covington and Officer Evans and the effect it would have on Covington's motive in testifying against his lifelong friend. Evans was one of the arresting officers in the instant case; subsequently, he was involved in the investigation of an unrelated crime, and Covington was a suspect. While Cov-

8. Utah, 550 P.2d 175, 176–177 (1976).

9. Utah, 568 P.2d 360, 362 (1977).

10. "Except as in these rules otherwise provided, the judge may in his discretion exclude evidence if he finds its probative value is substantially outweighed by the risk that its admis-

sion will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

ington was physically present at the jail, (the record does not reveal whether he was arrested or present voluntarily) Evans warned him concerning his testimony in this trial. Within the context of the ongoing investigation of Covington, defendant contends he should have been permitted to explore the factors which could have had a substantial influence on Covington's testimony, i. e., his motivation in testifying.

The right of cross-examination is an integral part of the right of confrontation, which is guaranteed by Article I, Section 12, Constitution of Utah and the Sixth Amendment of the Constitution of the United States. The cross-examination of a witness, testifying against the accused, provides a means of attacking his credibility and thus the substance of his testimony.[11] Furthermore, Section 78–24–1 provides that in every case the credibility of the witness may be drawn in question by his motives.

The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.[12] A trial court should be particularly solicitous of cross-examination intended to disclose bias or prejudice; e. g., a broad opportunity for examination should be allowed if its objective is to establish that an adverse witness in a criminal matter is giving his testimony in anticipation of favorable personal treatment, such as, police leniency by the state,[13] however, it is qualified as set forth in the following:

> "... even the right to cross-examine as to bias is not absolute or unqualified. It does not entail the right to harass, annoy, or humiliate a witness on cross-examination, nor to engage in repetitive questioning, nor to inquire into matters which would expose the witness to danger of physical harm. Misconduct which is so

old that it has little probative bearing on a witness' present impartiality is properly excludable." [14]

In this case defendant's opportunity was curtailed to adduce sufficient facts before the jury to support his claim that the testimony of witness, Covington, was given in anticipation of favorable treatment by the police in its investigation of his participation in criminal activities. Rule 45, U.R.E. was not designed and does not have the objective of undermining or limiting a defendant's right of confrontation and should be interpreted to coincide with the above cited qualifications with respect to cross-examination of a witness concerning his motives for testifying. The mere possibility of future criminal charges is a sufficient basis to explore the motives of the witness on cross-examination, and place his apprehensions thereof before the jury.[15]

Since the trial court unduly restricted defendant in the exercise of his constitutional right of cross-examination, the review thereof is controlled by the constitutional harmless error standard of *Chapman v. California*.[16] This standard compels reversal unless the reviewing court can declare a belief that the error was harmless beyond a reasonable doubt. Under the facts of this case, this Court cannot conclude the rulings of the trial court can be characterized as harmless error beyond a reasonable doubt.

CROCKETT, C. J., and WILKINS, HALL and STEWART, JJ., concur.

11. *State v. Anderson*, Utah, 612 P.2d 778 (1980).

12. *State v. Maestas*, Utah, 564 P.2d 1386, 1388 (1977).

13. Id.; also *Evans v. State*, Alaska, 550 P.2d 830, 837 (1976).

14. *Evans v. Alaska*, note 12, supra, at p. 837 cf 550 P.2d.

15. Id., at p. 839 of 550 P.2d.

16. 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).