The STATE of Utah, Plaintiff and Respondent,

v.

Patrick J. HACKFORD, Defendant and Appellant.

No. 20604.

Supreme Court of Utah.

April 22, 1987.

Anthony J. Famulary, Roosevelt, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Patrick J. Hackford was convicted by a jury of two counts of theft and of being a habitual criminal. Before this Court, he contends that the trial court improperly restricted cross-examination of the prosecution's key witness, Hackford's alleged accomplice. Hackford also asserts that the trial judge improperly instructed the jury on the habitual criminal charge. We agree that the trial court did err in restricting counsel's cross-examination concerning bias, but find that under the circumstances, the error does not warrant reversal of the conviction. We find no merit in Hackford's challenge to the habitual criminal instruction. The convictions are affirmed.

On April 27, 1984, Hackford climbed a fence and entered a Gulf Oil storage yard located in Duchesne County. While Hackford was inside, his accomplice, one Joe Lane, drove up a desolate road, returning shortly to help Hackford load the stolen items, which included drill bits, batteries, and tires. The two repeated the process in

similar fashion two days later. Both Hackford and Lane were arrested for the crimes. Hackford was charged with two counts of theft, two counts of burglary, and being a habitual criminal. Lane was charged with five separate offenses arising from the two incidents. Later, in exchange for a guilty plea to a theft charge, the prosecution dropped the other four charges against Lane.

The prosecution then called Lane as its principal witness at Hackford's trial. Lane repeatedly testified on direct examination that he had not entered into any agreement with the State in exchange for his testimony. On cross-examination, Hackford's counsel attempted to establish that such an agreement did, in fact, exist. When Lane denied any agreement, counsel asked, "What happened on all the bad check charges you had ...?" The prosecutor objected to the question on the grounds that the charges were irrelevant and had not resulted in a conviction and, therefore, could not properly be used to impeach Lane. The trial court sustained the objection and ordered Hackford's counsel to limit his impeachment to the charges stemming from the storage yard incidents or to any prior felony convictions. Defense counsel did inquire extensively into the dropping of the four charges in exchange for the plea to the theft count. The jury returned a guilty verdict on two counts of theft, but acquitted Hackford on the two burglary counts.

After the jury returned its guilty verdict on the theft charges, the case proceeded with respect to the habitual criminal charge. The prosecution introduced evidence of Hackford's two prior convictions. That evidence consisted of the following. The first of Hackford's prior felony convictions had resulted in a sentence to the Utah State Prison of from 0 to 5 years. However, execution of the sentence had been suspended and Hackford was placed on probation for three years, on condition that he serve six months in the Duchesne County Jail. He served the six months and was released on parole. However, before the three-year probation period had run, Hackford had committed another offense that resulted in a second felony conviction and a sentence to the Utah State Prison for 1 to 5 years. Because Hackford's second conviction constituted a violation of the conditions of the parole on the first conviction, it resulted in a revocation of his parole and he was ordered to serve out the 0–to–5–year sentence on the first conviction. He then served both sentences concurrently. After hearing this evidence and being instructed on the habitual criminal charge, the jury returned a verdict of guilty.

On appeal, Hackford's first claim is that the trial court committed reversible error by not allowing cross-examination of Lane regarding any deals made with the prosecution to dispose of the prior unrelated bad check charges. In restricting the cross-examination of Lane, the trial court apparently relied on Rule 608(b) of the Utah Rules of Evidence. Rule 608(b) provides in pertinent part:

> Specific instances of conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

As can be seen, Rule 608(b) permits cross-examination regarding specific instances of conduct if the examination relates to the witness' "character for truthfulness or untruthfulness" and if the trial court determines that the conduct in question is probative of truthfulness or untruthfulness. Here, the trial court determined that Lane's arrest for the bad check charges was not relevant to the issue of his character for truthfulness or untruthfulness. In deciding the question, however, the trial court misapplied Rule 608(b).

Rule 608(b) as a whole is pertinent only to evidence of specific instances of conduct offered as an attack on the general credibility of a witness. But that was not the issue to which Hackford's counsel's cross-examination was directed. Instead, he was seeking to show that the check charges had been dismissed in return for testimony in the Hackford case that would be favorable to the prosecution, i.e., that Lane was biased and had a motive to testify falsely.

■ We have never directly addressed the place of examination for bias in the context of Rule 608(b). However, Utah's Rule 608(b) is an exact copy of the federal rule of the same number, and cases under the federal rule and its counterparts in other states support the view that 608(b) does not deal with the proper scope of examination for bias. Inquiry into the possibility of such bias is a matter that "is never a collateral issue [of the kind] contemplated by Rule 608(b)." *Weber v. State*, 457 A.2d 674, 680 (Del.1983) (citations omitted) (decided under Delaware's identical Rule 608(b)); *see also United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Evidence of bias or motive is not introduced for the purpose of attacking or supporting a witness' general credibility, though it may have that effect. Rather, evidence of bias or motive is " 'always relevant as discrediting the witness and affecting the weight of his testimony.' " *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 3A J. Wigmore, *Evidence* § 940, at 775 (Chadbourn rev. 1970)). Therefore, if a prior instance of conduct is relevant to a witness' bias or motive to testify differently than would otherwise be the case, evidence pertaining to that conduct is not subject to exclusion under Rule 608(b). *Weber v. State*, 457 A.2d at 680–81.

The inapplicability of Rule 608(b) is relatively clear from its text and is confirmed by the cases discussed above. But if there is any question on the matter, we need only look to Rule 608(c), which, to our knowledge, is unique to Utah. That rule makes explicit what is otherwise implicit in 608(b). It states: "Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." Plainly, Rule 608(c) is the rule under which the propriety of the cross-examination of Lane should have been considered.

Was the cross-examination sought appropriate under Rule 608(c)? Although we have repeatedly emphasized the importance of permitting a cross-examiner wide latitude in exposing a witness' potential bias, *see, e.g., State v. Chesnut*, 621 P.2d 1228, 1233 (Utah 1980); *State v. Maestas*, 564 P.2d 1386, 1388 (Utah 1977), the right of cross-examination is not without limitation. In *State v. Clayton*, 658 P.2d 621, 623 (Utah 1983), we observed that a cross-examiner cannot embark upon "fishing expeditions" when exploring potential areas of bias. To permit an exploration of potential bias without adequate foundation for the questions asked certainly can create a danger of unfair prejudice. And as we noted in *State v. Chesnut*, the right to cross-examine

> does not entail the right to harass, annoy, or humiliate [the] witness on cross-examination, nor to engage in repetitive questioning, nor to inquire into matters which would expose the witness to danger of physical harm. Misconduct which is so old that it has little probative bearing on a witness' present impartiality is properly excludable.

621 P.2d at 1233 (quoting *Evans v. Alaska*, 550 P.2d 830, 837 (Alaska 1976) (citations omitted)).

■ The limitations on the right to cross-examine regarding bias can be best summarized by saying that the right is limited by Utah Rule of Evidence 403. That rule permits the exclusion of otherwise relevant evidence only "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R.Evid. 403.

Because the trial court operated under the assumption that it had complete discretion to decide whether to permit the exami-

nation, it naturally did not make findings regarding the factors mentioned in Rule 403, nor did it weigh those factors before precluding Hackford's counsel's cross-examination. It is always preferable to have express findings in the record so that we can understand the trial court's reasons for barring such cross-examination. *See State v. Patterson*, 656 P.2d 438, 438 (Utah 1982); *cf. In re Clatterbuck*, 700 P.2d 1076, 1081 (Utah 1985). But even in the absence of such findings, we will still affirm if we can find some basis in the record for concluding that the trial court's action falls within the limits of permissible discretion under Rule 403. *See State v. Patterson*, 656 P.2d at 438. Here, however, there is nothing in the record that would support a conclusion that the presence of the factors listed in Rule 403 would justify the preclusion of the attempted cross-examination.

■ Having determined that the court erred, the question is whether the error warrants reversal. This raises the issue of the proper standard for determining the harmfulness of the error. Although Utah Rule of Evidence 103 ordinarily determines the consequences of erroneous evidentiary rulings [1] where the error in question amounts to a violation of a defendant's right of confrontation guaranteed by the sixth amendment to the United States Constitution, its harmfulness is to be judged by a higher standard, i.e., reversal is required unless the error is harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340 (1972); *see also Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Patterson*, 656 P.2d at 439; *State v. Chesnut*, 621 P.2d at 1233.

To decide what standard of review we are to apply, we must determine whether the trial court's ruling amounted to a denial of Hackford's sixth amendment rights. To

this point, we have only concluded that the denial of Hackford's attempted cross-examination violated the Utah Rules of Evidence; we have not separately analyzed the constitutional question.

Certainly, disallowing a criminal defendant a fair opportunity to expose a witness' bias or motivation in testifying may infringe upon the defendant's constitutionally protected right of confrontation. *See, e.g., Delaware v. Van Arsdall*, 476 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Patterson*, 656 P.2d at 439; *State v. Chesnut*, 621 P.2d at 1233. But that statement does not answer the question of whether every ruling that bars examination concerning bias in violation of an evidentiary rule also violates the constitutional right of confrontation.

The United States Supreme Court in *Davis v. Alaska* was not presented with this issue. In *Davis*, the Alaska Supreme Court had held that preclusion of cross-examination was permitted under Alaska evidentiary rules. The United States Supreme Court reversed. It found that the specific denial of cross-examination presented in that case amounted to a denial of the sixth amendment right of confrontation. And our decisions in *Patterson* and *Chesnut*, although reversing trial court decisions barring cross-examinations concerning bias or motive, never directly addressed the issue. In both cases, we found the trial court ruling to have been in violation of our rules of evidence, and in both we analyzed the harmfulness of the error under the *Chapman* beyond-a-reasonable-doubt standard. But in neither case did we critically evaluate the question of whether or when a violation of an evidentiary rule equals a constitutional violation. Therefore, neither *Patterson* nor *Chesnut* should be considered as holding on that point.

---

**1.** Utah Rule of Evidence 103 provides in pertinent part: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." We recently elaborated upon the meaning of a

similarly worded rule of criminal procedure in *State v. Knight*, 53 Utah Adv.Rep. 13 (March 19, 1987) (interpreting Utah R.Crim.P. 30, Utah Code Ann. § 77–35–30(a) (1982)).

■ Other courts that have been presented with similar fact situations have seldom addressed the question of the degree to which the evidentiary standards and the constitutional guarantee are coextensive. However, after finding that an evidentiary standard has been violated by the preclusion of cross-examination concerning bias or motive, those courts have commonly gone on to determine whether the harmfulness of the erroneous evidentiary ruling is to be governed by the constitutional harmless-error standard or by some lesser standard by separately inquiring into the question of whether the confrontation right has been denied. *See, e.g., Story v. State*, 721 P.2d 1020, 1038–40 (Wyo.), *cert. denied*, —— U.S. ——, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986). The logical premise of such analysis is that the evidentiary standards and the constitutional guarantee are not and ought not to be entirely coextensive. This view is supported by statements in several United States Supreme Court opinions. *See, e.g., California v. Green*, 399 ·U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970) ("[M]erely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied."); *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) ("We acknowledge ... our traditional reluctance to impose Constitutional constraints on ordinary evidentiary rulings by state trial courts.");

*see also* Note, *Confrontation, Cross-Examination, and the Right to Prepare a Defense*, 56 Geo.L.J. 939, 960–61 (1968) (limitations on cross-examination constituting abuses of discretion are ordinarily treated as evidentiary rather than constitutional errors). We now so hold.[2] However, in the present case, we do not need to go further and determine at precisely what points the evidentiary and constitutional protections are congruent. This is because a review of the record convinces us that the error was harmless, even if the constitutional harmless-error standard as developed by the United States Supreme Court were applicable.

Whether an error under that standard is harmless depends on a "host of factors," including

the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence collaborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 106 S.Ct. at 1438. Considering all these factors, we find no harm to Hackford from the trial court's erroneous ruling.[3]

■ Although we concede that Lane's testimony was a critical part of the case against Hackford, the jury had sufficient information to fully appraise Lane's biases

---

**2.** The Supreme Court's decision in *Delaware v. Van Arsdall*, 476 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), does not conflict with this conclusion. There, the Court did not purport to consider whether the evidentiary standards and the constitutional guarantee are coextensive. Rather, the focus of the majority opinion was on the lower court's reversal of Van Arsdall's conviction without having first ascertained whether the trial court's erroneous blanket preclusion of cross-examination concerning bias had had any prejudicial impact on the defendant. *Id.*, 106 S.Ct. at 1436–38.

**3.** The "overwhelming evidence" test mandated by *Van Arsdall* is significantly different from the "reasonable possibility" test contemplated by *Chapman. See The Supreme Court, 1985 Term—Leading Cases*, 100 Harv.L.Rev. 100, 114–15 (1986). Although several commentators have criticized the "overwhelming evidence" test

because it might impair a criminal defendant's right to a jury trial, *see id.* at 115–16 & nn. 58–60, we are compelled to apply it in this case. *Delaware v. Van Arsdall*, 106 S.Ct. at 1438. Because Hackford did not raise the state constitutional issue, *see State v. Earl*, 716 P.2d 803, 805–06 (Utah 1986), we cannot decide which test is appropriate under the confrontation right guaranteed by article I, section 12 of the Utah Constitution—an issue undecided by the Utah cases that have applied the constitutional harmless-error standard. *But cf. State v. Scandrett*, 24 Utah 2d 202, 208, 468 P.2d 639, 643 (1970) (without specifying the constitution on which its ruling was based, the court rejected a prejudicial per se rule in favor of a presumption of prejudice that can be overcome by "untainted evidence so overwhelming that there is no likelihood whatsoever of a different result").

and motivations. *Cf. State v. Patterson*, 656 P.2d at 439–40. Specifically, the following matters support the conclusion that any error was harmless beyond a reasonable doubt.

1. During opening argument, the prosecution revealed that on two separate occasions Lane had made conflicting sworn statements, each of which implicated another individual as the one committing the crime. In his opening argument, defense counsel suggested that Lane had made both statements because he wanted to keep out of prison and that these statements indicated that he would do anything to please the prosecutor in the hope of staying out of prison.

2. During the prosecutor's direct examination of Lane, Lane admitted that he pleaded guilty to a charge of theft in connection with the same incident. On cross-examination, the defense pointed out to the jury that four other charges were dropped, although Lane persisted in denying that he had made any deal with the prosecution. Although the defense failed to ask Lane whether he hoped his favorable testimony would result in a lighter sentence, on redirect Lane testified that his cooperation would be taken into "consideration."

3. The investigating officer testified on redirect examination that Lane's cooperation would be given consideration in sentencing. The State then attempted to establish that any deal between Lane and the State related only to the first sworn statement and that after the police learned that that statement was false, all deals were off. However, defense counsel refuted this testimony on recross of the investigating officer.

4. During closing arguments, defense counsel noted that the investigating officer's testimony regarding the existence of a deal contradicted Lane's testimony on that point. In addition, the prosecutor unintentionally supported the suggestion of the defense by implying that Lane's testimony could influence the length of the sentence he would receive on his guilty plea.

From this summary, it is readily apparent that the jury was aware of numerous facts that would suggest that Lane's testimony was highly unreliable. In addition, Hackford's counsel was able to use these facts to good advantage to show Lane's bias. *Cf. Weber v. State*, 457 A.2d at 682. In the context of this case, therefore, we find beyond a reasonable doubt that the trial court's error was harmless.

■ Hackford's second claim is that the trial court erred by improperly instructing the jury on the habitual criminal charge. In instruction No. 2, the court stated:

> You are instructed that the word "committed" means the order by which a person is sent to prison. You are further instructed that each time a person is ordered sent to prison in carrying out a sentence, that person is being committed. It is irrelevant whether multiple commitments are to be served concurrently, that is, at the same time, or consecutively, that is separately.

Hackford argues that he has not been "twice committed" because his first conviction resulted in a suspended sentence.

■ The habitual criminal statute provides an enhanced sentence for "any person who has been twice convicted, sentenced, and committed for felony offenses." Utah Code Ann. § 76-8-1001 (1978). Hackford recognizes that he was ultimately required to serve the suspended prison sentence he received as a result of his first felony conviction; however, he argues that since that sentence was served concurrently with the sentence imposed for his second conviction, they "merged" into a single "commitment." In effect, Hackford equates one period of prison confinement with one "commitment." Since he did not serve two periods of confinement, Hackford concludes that he could not have been convicted under the habitual criminal statute, if the jury had been properly instructed.

We considered a similar contention in *State v. Montague*, 671 P.2d 187 (Utah 1983). There the issue was whether a defendant must have been convicted, sentenced, and committed to prison, and then

convicted, sentenced, and committed again before that defendant can be convicted under the habitual criminal statute. The defendant in *Montague* argued that one could not be convicted under the statute if the second conviction, sentence, and commitment did not occur wholly subsequent to one's having served the sentence for the first conviction.

In *Montague*, we observed that jurisdictions with analogous statutes have reached different conclusions on this issue. We concluded that the differences among jurisdictions can be accounted for by "each [court's] determination of what is the underlying purpose of its habitual criminal statute." 671 P.2d at 189.

Montague argued that the Utah statute intended to permit criminal offenders two separate opportunities to reform after having been incarcerated. He had been convicted twice, but because his two sentences were served consecutively, he had served only one period of prison confinement. On the basis of these facts, Montague argued that it would be inconsistent with the purpose of the statute to apply it to him because he had had only one opportunity to reform. This Court rejected Montague's contentions by stating:

> Neither the phrase "twice convicted, sentenced and committed" nor any other part of the habitual criminal statute suggests that the legislature intended a particular sequence of prior crimes or enacted the statute as a reformatory tool. Rather, the fair import of the statutory language suggests that its purpose is to do exactly what it does—make persistent offenders subject to greater sanctions.

671 P.2d at 190.

Hackford attempts to distinguish *Montague* on the ground that Montague's sentences were served consecutively, while Hackford's were concurrent. This is a distinction without a difference. The crux of the statute is that persistent offenders should receive greater sanctions, regardless of the order or manner in which they serve their prison sentences. Accordingly, we find the trial court's instruction proper.

The convictions are affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, Associate C.J., concurs in the result.