The STATE of Utah, Plaintiff and Respondent,

v.

Victor C. WILLIAMS, Defendant and Appellant.

No. 17319.

Supreme Court of Utah.

Oct. 14, 1981.

G. Fred Metos, Salt Lake City, for defendant and appellant.

David L. Wilkinson and Robert Parrish, Salt Lake City, for plaintiff and respondent.

---

1. In violation of U.C.A., 1953, 76–10–504.

HALL, Chief Justice:

Defendant appeals his conviction of carrying a concealed dangerous weapon,[1] a felony of the third degree.

On February 13, 1980, Sandy City Police Officers Joseph Newman and Robin Lang were sitting in separate cars at the intersection of 90th South and State Street, working selective traffic enforcement. At approximately 10:15 a.m., Officer Newman observed defendant's A.M.C. station wagon approach the intersection in the northbound left-hand turn lane. Defendant made an illegal left turn into the far outside right lane, heading west. Newman followed and "pulled over" defendant. The officer explained why defendant had been stopped and defendant furnished identification. While defendant waited, Newman returned to his police car, where he began to write defendant a warning citation. By this time, Officer Lang had arrived at the scene in his police car.

After writing the citation, Newman requested a warrants check and discovered that outstanding warrants had been issued on defendant. Officer Newman returned to defendant's vehicle and asked him to step out of the vehicle, whereupon defendant was arrested, handcuffed, and patted down.

At the time of the arrest, defendant was told that his automobile would be impounded. He requested that his satchel, which had been lying on the passenger's side of the front seat of the car, be locked under the floor where his spare tire was located. Officer Lang removed the satchel from the automobile, where it was lying partly unzipped, with the zipper end facing the driver's seat, and well within arms' reach of the driver's seat. On picking up the satchel, Officer Lang felt what he thought was the contour lines of a handgun. Lang unzipped the satchel completely and found a small caliber handgun inside, along with other items. The gun was loaded, in a fully cocked position, with the safety on, and was

positioned with the barrel down and the butt up.

Officer Lang took both the satchel and the handgun and stepped back to Officer Newman's car, where defendant was sitting. Newman had just finished reading defendant his Miranda rights. Officer Lang asked if defendant cared to talk about the satchel, and defendant responded affirmatively. Lang showed defendant the gun and asked whether the gun was his. Defendant replied, "Yes it is. I don't normally carry a concealed weapon, but I am en route to my job. I'm a truck driver and I'm taking it with me."

Defendant was charged with carrying a concealed dangerous weapon. Trial was had before a jury and defendant was found guilty as charged. Defendant was thereafter sentenced to be confined for the indeterminate terms as provided by law. Said sentence was suspended and defendant was placed on probation.

Defendant's first point on appeal is that the trial court committed reversible error by instructing that the weapon needed only to be accessible to defendant. Said instruction read as follows:

> An individual carries a concealed dangerous weapon when the weapon is in such proximity of the individual so as to be within his easy reach and under his control and must be sufficiently close to the individual to be readily accessible for immediate use. It is not necessary that the weapon be actually on the person of the individual in order for him to carry the weapon under our statutes.

In lieu of the foregoing, defendant requested the following instruction:

As used in these instructions, "to carry a dangerous weapon" means to wear, bear or carry a dangerous weapon upon one's person, or in his clothing, or in a pocket, for the purpose of use, or for the purpose of being armed and ready for offensive or defensive action in case of a conflict with another person.

 Without defining the word "carrying," the statute[2] merely prohibits the carrying of a concealed dangerous weapon. The statute must be interpreted and applied in light of its intended purpose.[3] Clearly, the purpose of concealed weapons statutes is to protect the public by preventing an individual from having on hand a weapon of which the public is unaware and which the individual might use should he be so inclined.[4] In order to give reasonable effect to such purpose, "carrying" necessarily must include more than when the weapon is in physical contact with the body. The danger to others is just as great where the weapon is readily accessible as where carried on the person of the individual. As a factual matter, where the concealed weapon is shown to be under defendant's control and within his immediate, easy or ready access, he will be deemed to be "carrying" the weapon. The instruction given by the trial court therefore fairly and accurately defined what is meant by carrying a concealed dangerous weapon.

Although the courts of other jurisdictions have not spoken with unanimity on the subject (due in large part to differences in statutory language), the foregoing appears to be the majority rule.[5] Typical of the courts' reasoning is as explained in the following excerpt from the case of *Brown v. United States*:[6]

---

**2.** *Id.*

**3.** *State v. Helm*, Utah, 563 P.2d 794 (1977).

**4.** See *State v. Ogata*, 58 Hawaii 514, 572 P.2d 1222 (1977); *State v. Gainey*, 273 N.C. 620, 160 S.E.2d 685 (1968); *People v. Pugach*, 15 N.Y.2d 65, 255 N.Y.S.2d 833, 204 N.E.2d 176 (1964), cert. den. 380 U.S. 936, 85 S.Ct. 946, 13 L.Ed.2d 823 (1965); *Commonwealth v. Butler*, 189 Pa. Super. 399, 150 A.2d 172 (1959); *People v. Raso*, 9 Misc.2d 739, 170 N.Y.S.2d 245 (1958).

**5.** See Anno: Concealed Weapon, 43 A.L.R.2d 492; *State v. Morrison*, 25 Or.App. 609, 549 P.2d 1295 (1976); *Stephens v. City of Fort Smith*, 227 Ark. 609, 300 S.W.2d 14 (1957); *Mularkey v. State*, 201 Wis. 429, 230 N.W. 76 (1930).

**6.** 30 F.2d 474 (D.C.Cir.1929).

What was the purpose of Congress in the enactment of this law? Obviously, the protection of the public from the menace of concealed "deadly or dangerous weapons." No one familiar with present conditions will doubt the necessity for such a statute. Its purpose is wholesome, and it is the duty of the court, in construing it, to have "in mind the legislative intent." [Citation omitted.]

\* \* \* \* \* \*

To rule that the weapon must be on the person would make possible the carrying of a deadly weapon concealed on the seat of an automobile, where it would be more readily accessible than it would be if concealed on the person. No such result is contemplated or permitted by the statute.

The applicable statute in *Brown* penalized concealment of deadly or dangerous weapons about the person. The court determined that if the word "about" had been intended to limit the statutory prohibition to the carrying of a concealed weapon on the person, Congress would have used the word "on" in place of "about." Similarly, if our statute were meant to be limited to the carrying of concealed weapons on the person, the legislature reasonably would have limited the language. Indeed, our former statute[7] did speak in terms of "upon the person." Such limiting language is noticeably absent from our present statute. U.C.A., 1953, 76–1–106 sets forth the applicable rule of construction.[8] Said section provides, in pertinent part, as follows:

> The rule that a penal statute is to be strictly construed shall not apply to this code, any of its provisions, or any offense defined by the laws of this state. All provisions of this code and offenses defined by the laws of this state shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law....

Clearly, where the weapon is immediately and easily accessible, the fair import of the law is that the individual is "carrying" the weapon.

The trier of fact necessarily found, and the record supports such finding, that the concealed weapon in the instant case was under defendant's control and readily accessible for his use. The gun was loaded, in a fully cocked position, with the safety on. It was easily within his reach in a satchel sufficiently open to permit defendant quickly to reach inside and withdraw the gun for immediate use. As such, it was much more accessible to him as he sat in his automobile, as it would have been had it been carried on his person in a boot, for example, or in a waistband in the small of his back. Defendant himself admitted to Officer Lang that he was carrying a concealed weapon. The court's instruction which defined "carrying" was properly given.

Defendant's second point on appeal is that the court erred in refusing defendant's request for an instruction which characterized carrying a loaded firearm in a vehicle[9] as a lesser included offense to carrying a concealed weapon.[10]

Under U.C.A., 1953, 76–1–402(3)(a), a defendant may be convicted of an offense included in the offense charged when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged ...."

U.C.A., 1953, 77–35–21(e) provides that "[t]he jury may return a verdict of guilty to

---

**7.** U.C.A., 1953, 76–23–4 (repealed in 1973).

**8.** See also, *State v. Archuletta*, Utah, 526 P.2d 911 (1974).

**9.** U.C.A., 1953, 76–10–505 provides:
Every person who carries a loaded firearm in a vehicle or on any public street in an incorporated city or in a prohibited area of an unincorporated territory within this state is guilty of a class B misdemeanor.

**10.** U.C.A., 1953, 76–10–504 provides:
Any person, except those persons described in section 76–10–503, carrying a concealed dangerous weapon as defined in this part is guilty of a class B misdemeanor, and if the dangerous weapon is a firearm, or sawed-off shotgun he shall be guilty of a felony of the third degree.

the offense charged or to any offense *necessarily included* in the offense charged . . . ." (Emphasis added.) In construing the predecessor [11] of this statute, the Court held as follows:

> The statute allows conviction for any lesser offense *necessarily included* in the offense charged in the indictment or information, but does not allow conviction of any lesser offense stated in the indictment unless it is *necessarily included* in the greater offense. The lesser offense must be a necessary element of the greater offense and must of necessity be embraced within the legal definition of the greater offense and be a part thereof.[12] [Emphasis in original.]

In *State v. Brennan*,[13] the Court held that:

> The rule as to when one offense is included in another is that the greater offense includes a lesser one when establishment of the greater would necessarily include proof of all the elements necessary to prove the lesser. Conversely, it is only when the proof of the lesser offense requires some element not involved in the greater offense that the lesser would not be an included offense.

In even more explicit language, in *People v. Escarcega*[14] it was held as follows:

> It is of no consequence that the *evidence* at trial might also establish guilt of another and lesser crime than that charged. As indicated, to constitute a "lesser and necessarily included offense" it must be of such a nature that as a matter of law and considered in the abstract, the greater crime as defined by statute or charged in the accusatory pleading "*cannot be committed without* necessarily committing [such other] offense." This rule has been constantly reiterated. . . . The lesser offense must "necessarily and at all times [be] included within another one." . . . "If, in the commission of acts made unlawful by one statute, the offender must always violate another, the one offense [i.e., the latter] is necessarily included in the other." [Citations omitted; emphasis and bracketed language in original.]

■ The fact that defendant might have been charged (on the facts of this case) with carrying a loaded firearm in a vehicle does not make it a lesser included offense to carrying a concealed dangerous weapon. In order to be a "lesser included offense," the elements of the lesser offense must necessarily and always be included within the elements of the greater offense.

■ Analysis of U.C.A., 1953, 76–10–504 and 76–10–505 leads to the conclusion that the latter is not a necessarily included offense of the former because Section 505 (carrying loaded firearm in vehicle) contains elements which must be proven that are not necessary for convictions under Section 504 (carrying concealed dangerous weapon). This is to be seen by considering three different elements: (1) Section 505 requires that the offense occur in a vehicle, or a public street in an incorporated city, or in a prohibited area of an unincorporated territory within the state; Section 504 is not so limited by location, in that the substantive offense may occur anywhere. (2) For violation of Section 505, the instrumentality must be a "firearm"; under Section 504, the instrumentality need only be a "dangerous weapon," which includes "any item that in the manner of its use or intended use is capable of causing death or serious bodily injury."[15] (3) Section 505 requires that the firearm be *loaded* to constitute the substantive offense; under 504, even where the dangerous weapon is a firearm, there is no requirement that it be loaded.

For the foregoing reasons, Section 505 is *not* a lesser included offense of Section 504. This was made abundantly clear in the case

---

**11.** U.C.A., 1933, 105–34–6.

**12.** *State v. Woolman*, 84 Utah 23, 33 P.2d 640 (1934).

**13.** 13 Utah 2d 195, 371 P.2d 27 (1962).

**14.** 43 Cal.App.3d 391, 117 Cal.Rptr. 595 (1974).

**15.** U.C.A., 1953, 76–10–501(1).

of *State v. Gandee,*[16] where the Court made the following observations:

> In comparing those two sections of the statute [505 and 504], it will be seen that there is a significant difference between them; and that they therefore do not present the usual situation of a major crime with lesser degrees included therein, such as homicide, with the various lesser degrees thereof, or grand larceny, wherein if the property is not of sufficient value, the included offense of petit larceny may be found. The essential of Section 504 is to prohibit the secretiveness in "carrying a concealed dangerous weapon." This could be any kind of a dangerous weapon such as a knife, or a gun, or a bomb, or any type of a dangerous or explosive instrumentality.
>
> On the other hand, the prohibition of Section 505 is directed specifically toward the carrying of a "loaded firearm" in just three specified places, towit [sic]: in any vehicle, or in any public street in any incorporated city, or in any expressly prohibited area of an unincorporated territory. Under Section 504, a person could be charged with carrying a "concealed weapon," which might be the knife, bomb, or explosive device, but if the proof of the element of concealment failed, he would not be guilty of a violation of Section 505 because it would not be a "loaded firearm" as prohibited in that section.
>
> Related to the foregoing, there is a further difficulty with defendant's claim that there should have been an instruction on Section 505 as a lesser included offense. The defense he asserted in his own testimony was that the gun was not loaded. It is thus plainly apparent from his own position that there is an element in the offense of violating Section 505, i. e., that the firearm must be loaded, which is not required to prove a violation of Section 504.
>
> The purpose of the foregoing observations is to point out that these two statutes are not parallel and to show that there was some justification for the concern of court and counsel as to whether it would be appropriate to instruct on the claimed included offense under Section 505.

Since "carrying a loaded firearm in a vehicle" is not a lesser included offense of "carrying a concealed dangerous weapon," defendant was not entitled to his requested instruction.[17]

The verdict and judgment of the lower court is affirmed.

STEWART, HOWE and OAKS, JJ., and CHRISTINE DURHAM, District Judge, concur.

---

16. Utah, 587 P.2d 1064 (1978).

17. See U.C.A., 1953, 76–1–402(4) and *State v. Hyams*, 64 Utah 285, 230 P. 349 (1924).