The STATE of Utah, Plaintiff
and Respondent,

v.

Charles L. CRICK, et al., Defendant
and Appellant.

STATE of Utah, Plaintiff and
Respondent,

v.

Mary HOLLOWAY, aka Mary V. Creighton, Defendant and Appellant.

Nos. 18080, 18219.

Supreme Court of Utah.

Nov. 9, 1983.

Stephen R. McCaughey, Salt Lake City, for Crick.

Ronald Yengich, Salt Lake City, for Holloway.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

Samuel Beare died of multiple stab wounds to his chest, any one of which could have been fatal. His body was found when a witness saw it removed from a car and deposited on the ground by one Garcia in the presence of defendants Crick and Holloway. Garcia had a separate trial, and this Court affirmed his conviction of second degree murder. *State v. Garcia*, Utah, 663 P.2d 60 (1983).

In this appeal from their convictions of second degree murder, defendants Crick and Holloway have but one assignment of error: the refusal of their request to have the jury instructed on the lesser included offense of manslaughter. That single question, properly preserved at trial, raises fundamental issues on the content and administration of the rules of lesser included offenses in the various crimes of homicide.

Defendants' argument has three steps: (1) Manslaughter is a lesser included offense of second degree murder. (2) If there is any evidence on any reasonable theory of the case under which the defendants might be convicted of that lesser included offense, they have a right to a jury instruction on that offense. *State v. Dougherty*, Utah, 550 P.2d 175, 176–77 (1976); *State v. Gillian*, 23 Utah 2d 372, 374, 463 P.2d 811, 812–13 (1970); *State v. Hyams*, 64 Utah 285, 287, 230 P. 349, 349–

50 (1924); *State v. Mewhinney*, 43 Utah 135, 154, 134 P. 632, 639–40 (1913). (3) Here there was sufficient evidence to convict defendants of manslaughter, so they were entitled to an instruction on that lesser included offense. For the reasons noted hereafter, we disagree with defendants' points (2) and (3), and affirm their convictions.

## I. LESSER INCLUDED OFFENSES IN CRIMINAL HOMICIDE

We agree that manslaughter is a lesser included offense of second degree murder, but for reasons different from those cited in the parties' briefs. There are scores of decisions elaborating the rules on lesser included offenses under the statutory and decisional law that preceded our Criminal Code, but those cases are no longer entirely on point on these questions.

Utah adopted a new Criminal Code in 1973. U.C.A., 1953, § 76–1–101 to § 76–10–1401. Although often termed a "codification" of the common law, this Code in fact changed the definitions of various crimes. It also made important changes in the definition of the lesser included offense and in the rules governing the relationship between greater and lesser offenses. Consequently, cases decided under prior statutes are not automatic precedents to govern similar questions under the new Criminal Code. The old precedents must be viewed with caution.

The starting point is the language of the new Code. So far as pertinent in this case, § 76–1–402 provides as follows:

(3) A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein; or

(c) It is specifically designated by a statute as a lesser included offense.

(4) The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

Subsection (3) defines the lesser included offense, and subsection (4) dictates the rule for charging the jury in respect to the lesser included offense.

Subsection (3)(a) states the rule for identifying lesser included offenses that are not otherwise specified in the statute (such as in (b) and (c)). Subsection (3)(a) is authoritatively construed in *State v. Baker*, Utah, 671 P.2d 152 (1983). *Baker* holds that the lesser included offense relationship is determined by a comparison of statutory elements when the prosecution requests the instruction and by the facts proved at trial when the defendant requests the instruction. For purposes of this case, we need not decide whether *Baker*'s interpretation of (3)(a) makes some or all of the various types of manslaughter (§ 76–5–205) lesser included offenses of some or all of the various types of second degree murder (§ 76–5–203),[1] because that relationship is specified by a subsequent provision.

■ Subsection (3)(c) specifies that an offense is a lesser included offense when

---

**1.** Manslaughter was surely a lesser included offense prior to our Criminal Code, *State v. Gillian*, 23 Utah 2d at 376–77, 463 P.2d at 814, and several of our post-Code decisions have assumed that this relationship continued under the new Code, at least as to some of the various types of second degree murder. *E.g., State v. Howell*, Utah, 649 P.2d 91 (1982); *State v. Lopez*, Utah, 626 P.2d 483 (1981); *State v. Howard*, Utah, 597 P.2d 878 (1979); *Farrow v. Smith*, Utah, 541 P.2d 1107 (1975). But this conclusion does not necessarily follow as to other types of second degree murder since some of the types of manslaughter appear to require the proof of not "the same or less than all" but *more* facts than are "required to establish the commission" of some variations of second degree murder. § 76–1–402(3)(a). These extra facts include extreme mental or emotional disturbance or moral or legal justification. § 76–5–205(1)(b) and (c).

"[i]t is specifically designated by a statute as a lesser included offense." We conclude that § 76–5–201 and the succeeding sections under the heading of "criminal homicide" (through § 76–5–207) amount to such a designation. Section 76–5–201 provides:

(1) A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence unlawfully causes the death of another.

(2) Criminal homicide is murder in the first and second degree, manslaughter, or negligent homicide, or automobile homicide.

In the succeeding sections, the Code sets out the statutory definitions of the various types of criminal homicide, each (except for automobile homicide) in descending order of seriousness. This structure—notably the identification of the crime of criminal homicide and the specification of common elements in § 76–5–201, and the relationships inherent in the succeeding sections—fulfills the § 76–1–402(3)(c) requirement of specific (statutory) designation of a lesser included offense. Consequently, all of the various degrees of homicide have the relationship of greater and lesser included offenses.[2] Although not mandated by the legislative history, which is silent on this point, our construction of (3)(c) is consistent with the evident purpose of the Model Penal Code, from which these subsections were drawn.[3]

2. We express no opinion on what, if any, other crimes meet the § 76–1–402(3)(c) requirement of specific designation as a lesser included offense. We only note that so far as our research discloses no code provision expresses that relationship directly. Consequently, the specific designation provided in § 76–1–402(3)(c) must have been intended to be satisfied by evident structural relationships and common elements and headings, as with criminal homicide.

3. Unlike the other provisions of subsections (3) and (4), which are essentially identical to the Model Penal Code, subsection (3)(c) is a substitution. The comparable provision of the Model Penal Code, § 1.07(4)(c), makes an offense "included" when "(c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person,

## II. JURY INSTRUCTIONS ON LESSER INCLUDED OFFENSES

Defendants argue that they have a right to an instruction on any lesser included offense for which, on any reasonable theory of the case, there is any evidentiary basis to convict them. Holloway even argues that there is a presumption that a lesser included instruction requested by a defendant should be given, even when it is inconsistent with the evidence at trial. And Crick argues that in determining the degree of homicide of which a defendant is guilty "the jury may consider not only the nature of the killing, but also the personal turpitude of the defendant." The thrust of defendants' arguments is that the jury should be free to convict defendants of a lesser included offense without regard to whether they are guilty of the charged offense.

█ Whatever merit defendants' argument might have claimed under prior law, it was specifically rejected in our unanimous decision in *State v. Baker*, 671 P.2d, at 159:

Once it is established that an offense is included within the meaning of § 76–1–402(3), one more step is required before the trial court must instruct the jury regarding it. Under § 76–1–402(4), the court is obligated to instruct on the lesser offense only if the evidence offered provides a "rational basis for a verdict [1] acquitting the defendant of the of-

property or public interest or a lesser kind of culpability suffices to establish its commission." 10 Unif.Laws Annot. 457 (1974). The reporter's note states that offenses falling in this category are not necessarily included offenses under the earlier definition because they may require proof of different facts than required for the offense charged, and adds: "The most common circumstances are likely to include: (1) Offenses which are less serious types of homicides than the one charged; ...." ALI Model Penal Code, Tent.Draft No. 5, p. 41 (1956).

The Utah legislative history is silent on the reason for substituting § 76–1–402(3)(c) for the language of the Model Penal Code, but so far as pertains to the issue in the present case, the substituted language seems to produce no different result.

fense charged and [2] convicting him of the included offense."

(Bracketed numbers added.) Defendants' argument and the pre-Code authorities they cite are consistent with the second element in § 76–1–402(4), but they ignore the first element. In short, as we recognized in *Baker*, our Criminal Code added the requirement that the evidence must provide a rational basis for *both* acquitting of the charged offense and convicting of the lesser included offense.

This is the clear and stated purpose of the Model Penal Code provision from which § 76–1–402(4) is copied verbatim. Thus, the reporter's note states that where the evidence would not justify any verdict other than conviction or acquittal of the charged offense, an instruction on an included offense would be improper because it "might well be an invitation to the jury to return a compromise or otherwise unwarranted verdict." Consequently, the note continues, "The submission of an included crime is justified only where there is some basis in the evidence for finding the defendant innocent of the crime charged and yet guilty of the included crime. *People v. Mussenden* [308 N.Y. 558, 127 N.E.2d 551 (1955)], *supra.*" ALI *Model Penal Code, Tent. Draft No. 5*, p. 43 (1956). *People v. Mussenden*, 308 N.Y. 558, 127 N.E.2d 551 (1955), which was cited in the reporter's note and relied on in our decision in *State v. Baker*, 671 P.2d at 157–158, supports and further explains the rationale for this position. Although conceding that the jury has an inherent "mercy-dispensing power" as an inevitable consequence of the jury system, *Mussenden* holds that the jury does not "have the right to find a fact and then refuse to render the verdict which such a finding necessarily requires." "[C]ertainly," the opinion continues, a trial court "should avoid doing anything, such as submitting lower crimes in an inappropriate case, that would constitute an invitation to the jury to foreswear its duty and return a compromise or otherwise unwarranted verdict." 308 N.Y. at 563, 127 N.E. at 554. We agree.

For these reasons, it is not sufficient merely "to determine if there exists [a] reasonable basis upon which a conviction of the lesser offense could rest," as was suggested in *State v. Dougherty*, 550 P.2d at 176, and other cases decided under the pre-Code law. Insofar as any post-Code cases have quoted or relied on this language, as was done in *State v. Chesnut*, Utah, 621 P.2d 1228, 1232 (1980), they are disapproved as contrary to the plain terms of the Criminal Code of 1973.

Most of our authorities are consistent with the foregoing interpretation of the Code provision. Thus, in *State v. Elliott*, Utah, 641 P.2d 122 (1982), we unanimously reversed an aggravated assault conviction for failure to give the defendant's requested instructions because "[t]he evidence adduced at trial established a rational basis for a verdict acquitting defendants of the offense charged and convicting them of the lesser included offenses of assault or aggravated assault." *Id.* at 124 (citation omitted). Conversely, in *State v. Clayton*, Utah, 658 P.2d 624 (1983), we affirmed a conviction for attempted second degree murder because the evidence in the case did not "provide the requisite 'rational basis' for defendant's requested [and refused] instruction on attempted manslaughter." *Id.* at 626.

Similarly, in *State v. Bender*, Utah, 581 P.2d 1019 (1978), we affirmed a conviction for theft, notwithstanding the refusal of defendant's requested instruction on attempted theft, giving the following explanation:

No evidence was presented that would reduce the charge of theft to *attempted* theft. The question presented to the jury [by the evidence] was simply that of Bender's guilt or innocence of theft. Had the jury believed his explanation of the event they would have acquitted him. Obviously, they did not and he was convicted. Certainly there was no *middle* ground of *attempted* theft.

*Id.* at 1020–21 (emphasis in original). To the same effect is *State v. Bell*, Utah, 563 P.2d 186 (1977), which affirmed a convic-

tion for burglary based on eyewitness identification of a break-in. It was not error to refuse defendant's requested instructions on the lesser included offenses of trespass and attempted burglary based on his testimony that he was not at the scene, since the prosecution had met its burden on the charged offense and there was "no evidence tending to reduce the greater offense." *Id.* at 188.

◼ In determining whether there is a "rational basis" for acquitting the defendant of the offense charged and convicting him of a lesser included offense, the court must, of course, view the evidence and the inferences that can be drawn from it in the light most favorable to the defense. *State v. Gillian,* 23 Utah 2d at 376, 463 P.2d at 814. Similarly, as we said more recently in *State v. Baker,* 671 P.2d at 159:

> [W]hen the evidence is ambiguous and therefore susceptible to alternative interpretations, and one alternative would permit acquittal of the greater offense and conviction of the lesser, a jury question exists and the court must give a lesser included offense instruction at the request of the defendant.

Our construction of § 76–1–402(4) is consistent with the purpose of the rules that establish the relationship of greater and lesser offenses and assign consequences to that relationship. In the familiar circumstance where all the facts required to prove the commission of the lesser offense are included within the facts required to establish the commission of the offense charged (§ 76–1–402(3)(a)), the evidence that could serve as a basis for convicting of the greater offense could always serve as the basis for convicting of any lesser offense. If the jury were free to acquit of the greater offense and convict of any lesser offense simply because the lesser offense had been proved, this would allow the jury to preempt the prosecutor's function in charging offenses and the judge's function in imposing sentences.[4] This is why an instruction on a lesser included offense (even one that must necessarily have been proved by the evidence on the charged or greater offense) is inappropriate unless there is a basis in the evidence upon which the jury could acquit of the greater offense and convict of the lesser offense.[5] This is also the reason why our cases commonly affirm the rejection of defense attempts to obtain instructions on lesser included offenses (whatever their type) for which there is no evidentiary support in the record. *Boggess v. State,* Utah, 655 P.2d 654 (1982) (manslaughter vs. negligent homicide); *State v. Lopez,* Utah, 626 P.2d 483 (1981) (second degree murder vs. manslaughter); *State v. Tucker,* Utah, 618 P.2d 46 (1980) (auto theft vs. temporary deprivation of a motor vehicle); *State v. Howard,* Utah, 597 P.2d 878 (1979) (second degree murder and manslaughter vs. negligent homicide). Instruction on lesser included offenses in that circumstance would confuse the jury as well as invite them to exceed their function.

◼ We note in passing that we have recently reaffirmed the principle that a defendant may be convicted of a lesser included offense even where the lesser offense has not been charged and the defendant has not requested such an instruction. *State v. Dyer,* Utah, 671 P.2d 142 (1983); *State v. Howell,* Utah, 649 P.2d 91 (1982). Similarly, in a bench trial the court may convict of a lesser included offense even

---

4. This conclusion is not contrary to *State v. Shondel,* 22 Utah 2d 343, 453 P.2d 146 (1969), and its progeny, which hold that where two statutes proscribe the same conduct but impose different penalties, the defendant is entitled to the lesser penalty. Recent cases stress that *Shondel* does not apply where the statutes do not prohibit the same conduct, *Helmuth v. Morris,* Utah, 598 P.2d 333 (1979), or where there is no doubt as to which of the two statutes is applicable to the facts of a particular case. *State v. Kerekes,* Utah, 622 P.2d 1161 (1980).

5. For example, there would be a basis for the lesser included offense instruction where the greater offense has four elements, three of which prove the lesser offense, and the evidence of the fourth element is disputed. If the jury found the existence of the first three elements but was unpersuaded of the fourth, they could rationally acquit of the greater offense and convict of the lesser one.

where the lesser offense has not been charged. *State v. Lloyd*, Utah, 568 P.2d 357 (1977); *State v. Cornish*, Utah, 568 P.2d 360 (1977). But we caution that such a conviction is only appropriate where the lesser offense "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." § 76–1–402(3)(a). Otherwise, the defendant could be deprived of his constitutional right to "protect[ion] from instructions to the jury which might subject him to a conviction of a crime against which he has had no opportunity to defend." *State v. Baker, supra*, at 156. *Cf. State in Interest of L.G.W.*, Utah, 641 P.2d 127, 130 (1982); § 76–1–402(5).

■ We conclude that defendants were not entitled to have the jury instructed on the lesser included offense of manslaughter unless the evidence provided a rational basis upon which the jury could acquit them of second degree murder and convict them of manslaughter. We proceed to that inquiry.

### III.  THE EVIDENCE

■ The evidence that is urged to provide a rational basis for the jury to acquit of second degree murder and convict of manslaughter came principally from the testimony of defendants Crick and Holloway. For purposes of judging its sufficiency to require an instruction on the lesser included offense, we view the evidence in the light most favorable to the defense.

■ Both Crick and Holloway gave the same description of the event. The four participants had been drinking and watching TV at the apartment shared by Crick and Holloway, where Beare (the victim) was a temporary overnight guest due to marital problems. Beare made a racial slur against Garcia. These two then fought with their fists. When Beare was knocked senseless, Garcia continued to beat him, hitting him with one or more unidentified objects seized in the room. Holloway and Crick took no part in the fight, except that Crick, in response to Holloway's urging, once attempted to pull Garcia off Beare "when it got out of hand," but Garcia knocked him away.

Garcia dragged Beare (still senseless) out of the apartment and put him in the hatchback part of Beare's car. The three then drove until the car ran out of gas in a Salt Lake City neighborhood. Garcia pulled Beare's body out of the car and dragged it over on the grass while Crick and Holloway waited in the car. During this time, Crick saw dimly through the rear-view mirror an object in Garcia's hand going up and down over Beare.

When Garcia returned to the car, Holloway saw that he had a knife in his hand, and he was covered with blood. This was the first point in the events of that night when either Crick or Holloway mentioned a knife. Holloway testified that when she talked to a friend about Beare the next day she did not know Beare had been stabbed. Both Crick and Holloway insisted that they at no time stabbed Beare or even hit him or participated in the fight in any way. The medical examiner testified that Beare had been stabbed 15 times in the chest and torso, to a depth of seven or eight inches. Any one of these wounds could have caused his death.

Defendants' testimony obviously provided a basis upon which the jury could have acquitted them of second degree murder. (We do not detail the evidence upon which the jury convicted the defendants, since they do not challenge its sufficiency.[6]) But the evidence provided no rational basis

---

6. For example, one witness testified that about ten days before the killing Holloway expressed concern that Beare might harm a mutual acquaintance, and then added: "But it's all right because we're going to kill him anyway." Two other witnesses testified to a conversation with both Crick and Holloway the day after the killing. Both quoted Holloway as saying that Garcia had gone crazy and killed Beare, and then added: "Well, really we all killed him." Crick then added, "Yeah, we all did it." One witness quoted Crick as saying "[t]hat they had all taken turns in stabbing him." There was other evidence of both defendants' participating in the initial beating of Beare and breaking beer mugs over his head, and of the accumulation of blood in the apartment where he was killed.

upon which the jury could have acquitted Crick or Holloway of second degree murder *and* convicted them of manslaughter. In their testimony, they obviously attempted to secure acquittal on the basis of failure to prove that they caused the victim's death. Acquittal on that ground would also require acquittal of manslaughter. Moreover, conviction of manslaughter requires proof of (a) recklessness, (b) the influence of extreme mental or emotional disturbance for which there was a reasonable explanation or excuse, or (c) reasonable belief that the circumstances provide a moral or legal justification or extenuation. § 76–5–205. Even considering the evidence most favorably to the defendants, it provides no basis for a jury to convict either of them of manslaughter on any of these grounds.

Arguing that she "is basically in a position of an accomplice,"[7] Holloway tries to justify a manslaughter instruction as to her on the basis of Garcia's emotional disturbance at the racial slur or on the basis of legal justification in connection with Garcia's fist fight with the victim. The record shows that Garcia had been drinking heavily that evening, and defendants testified that he was "berserk," "in a trance," and "not rational at all" during his beating of Beare. The medical examiner testified that Beare's wounds were consistent with those that would have been inflicted by an assailant who was crazy or in a rage.

This argument fails. A defendant can be criminally responsible for an *act* committed by another, but the *degree of his responsibility* is determined by his own mental state in the acts that subject him to such responsibility, not by the mental state of the actor. This is clear from the language of § 76–2–202, quoted in note 7 *supra*. Otherwise, a designing person could use a madman to kill another and mitigate his own responsibility by reference to the derangements of the person he had used to accomplish his purposes. The law is otherwise. Since there was no evidence at trial that Holloway, as an accomplice, had acted recklessly or under the influence of extreme mental or emotional disturbance or with a reasonable belief that the circumstances provided a moral or legal justification or extenuation, there was no basis in the record to convict her of manslaughter on the theory that she was an accomplice of Garcia's.

The defendants' convictions of second degree murder are affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, Justice (dissenting):

I concur with the majority opinion in holding that reckless manslaughter is a lesser included offense of second degree murder, but I cannot subscribe to the reasoning of the Court in support of that proposition or to the conclusion that a manslaughter instruction need not have been given in this case. I had thought that our recent opinion in *State v. Baker*, Utah, 671 P.2d 152 (1983), had finally placed the doctrine of lesser included offenses on a rational and consistent foundation. I submit that the majority opinion 1) unnecessarily beclouds the law of lesser included offenses, at least as to homicide offenses; and 2) establishes an incorrect standard for determining whether a lesser included offense instruction should be given.

Probably no other doctrine of the criminal law has been addressed as frequently over the past few years by this Court as the doctrine of lesser included offenses. Since 1978 this Court has referred to that doctrine in no less than twenty-five different opinions. The problem that this Court has wrestled with must have also been encountered in a magnified form in the trial courts.

7. The jury was instructed in the language of § 76–2–202, which provides: "Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct."

*State v. Baker, supra,* provides a sound analysis of the differing rules which govern the doctrine of lesser included offenses and the closely related doctrine that governs when a defendant is entitled to an instruction on his theory of the case. In *Baker,* the Court distinguished between the doctrine of lesser included offenses when an instruction for a lesser included offense is requested by the prosecution and when a lesser included offense instruction is requested by the defense. As explained in *Baker,* the two situations are basically different for constitutional reasons. Because a defendant has a constitutional right to be given fair notice of the crime with which he is charged, and because of his right to have a jury pass on issues which he submits for resolution, a defendant stands in a different position with respect to the doctrine of lesser included offenses than does the State. The State is, as explained in *Baker,* entitled to a lesser included offense instruction only when *"all the facts required to establish the commission of the offense charged"* include all the facts necessary to establish the lesser offense. U.C.A., 1953, § 76–1–402(3)(a).[1] That statutory rule is in fact based on the constitutional requirements in both the state and federal constitutions that a defendant must be given fair notice of the charges against him. On the other hand, our constitutions do not confer upon the State a concommitant right of notice, for obvious reasons.

In the instant case the Court unnecessarily adopts a different analysis and in effect, however unintentional, invites the giving of a lesser included offense instruction tendered by the State when it would violate a defendant's constitutional right of notice. Why the Court chooses to depart from the analysis in *State v. Baker* is not clear to me; more important, it is fraught with potential mischief.

Section 76–1–402(3) sets forth three categories of lesser included offenses:

(a) It [the lesser offense] is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein; or

(c) It is specifically designated by statute as a lesser included offense.

*State v. Baker* was decided under subparagraph (a). The Court, in the instant case, decides the case under subparagraph (c), although it could just as well have been decided under subparagraph (a) with exactly the same result. The majority's theory in this case is that § 76–5–201 designates each of the homicide offenses as a lesser included offense of a greater homicide offense.

Section 76–5–201(1) and (2) of the criminal code states:

(1) A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence unlawfully causes the death of another.

(2) Criminal homicide is murder in the first and second degree, manslaughter, or negligent homicide, or automobile homicide.

The majority position that § 76–5–201 constitutes a statute which "specifically designates" lesser included offenses, is a stretch of the statutory language. On its face, § 76–5–201 does not "specifically" designate any lesser included offenses. Furthermore, all homicide crimes are not necessarily lesser included crimes. There are simply too many instances of lesser homicide offenses including elements not included in a greater offense. If the trial courts were to take this Court at its word in the instant case, they could give a *state*-proposed lesser included offense instruction that would unconstitutionally deny a defendant adequate notice of the crime for which he was convicted in violation of his Sixth Amendment rights. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Argersinger v.*

---

**1.** This Court has in the past referred to all the "elements of the crime" rather than "all the facts." *E.g., State v. Williams,* Utah, 636 P.2d 1092 (1981).

*Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

Since first degree murder obviously cannot be a lesser included offense, it necessarily follows that only those degrees of homicide less than first degree can be considered lesser included offenses. A cursory inspection of the second degree murder statute, § 76–5–203; the manslaughter statute, § 76–5–205; the negligent homicide statute, § 76–5–206; and the automobile homicide statute, § 76–5–207, makes clear that there may be elements and facts of each of the degrees of homicide that are not included in the greater offense. Although a negligent homicide charge, for example, will almost always, if not always, constitute a lesser included offense of a charge of manslaughter, it does not necessarily follow that all lesser homicide offenses are included in a greater homicide charge. In general, each lesser charge tendered by the State will have to be analyzed with great care to avoid unconstitutionality. Clearly, some of the lesser homicide offenses are not lesser included offenses of a greater offense.

Under *State v. Baker, supra,* if a *defendant* requests an instruction on a homicide offense of a lesser degree than that charged, he is entitled to that instruction if there is some rational basis in the evidence to support the elements of that particular offense. It should be plain that the question is whether the *jury* could possibly find as the defendant requests, and not whether the trial judge, or an appellate judge, is of the view that the defendant is not guilty of the greater offense. For a trial judge to rule on that question on the basis of whether he or she thinks the defendant is guilty of the offense charged would be to usurp the constitutional right of a defendant to a jury trial on the issues which he is entitled to have submitted to the jury. This Court in *State v. Gillian,* 23 Utah 2d 372, 374, 463 P.2d 811, 812 (1970), stated:

> One of the foundational principles in regard to the submission of issues to juries is that where the parties so request they are entitled to have instructions given

upon their theory of the case; and this includes on lesser offenses if any reasonable view of the evidence would support such a verdict. This is in accord with the authorities generally, and with the adjudications of this court, as stated in a number of cases dealing with instructing on lesser offenses .... [Footnote omitted.]

*See also State v. Castillo,* 23 Utah 2d 70, 457 P.2d 618 (1969) (propriety of self-defense instruction); *State v. Hyams,* 64 Utah 285, 230 P. 349 (1924); *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). In *State v. Johnson,* 112 Utah 130, 141, 185 P.2d 738, 743 (1947), the Court stated that "the defendant is entitled to have the jury instructed on his theory of the case if there is any substantial evidence to justify giving such an instruction." In *State v. Ferguson,* 74 Utah 263, 269, 279 P. 55, 57 (1929), Justice Straup, in a concurring opinion, stated:

> If in a case of different degrees of the charged greater offense there is sufficient evidence to submit the case to the jury of the charged greater offense, I do not see wherein it is the prerogative of the court to direct the jury of what degree only the jury may find the defendant guilty, or direct them that, if they do not find him guilty of the charged greater offense they must acquit him. To permit the court to do that is to permit it to be the judge of the facts.

In sum, a refusal to submit a defendant's instruction on a lesser included offense would constitute a denial of the defendant's constitutional rights to trial by jury and due process of law if there is any substantial evidence to justify the instruction. *See Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

A State request for a lesser included offense instruction must be decided on a different basis. Fundamental to the criminal law is the principle that a defendant cannot be fairly and constitutionally prosecuted unless he has been put on fair notice of the exact nature of the charge made against him by the State. *Faretta v. Cali-*

*fornia,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Under our constitutions a person may not be convicted of a crime not charged and for which the defendant had no opportunity to prepare. In *State v. Howell,* Utah, 649 P.2d 91, 95 (1982), we stated:

We are not unmindful that there is a direct and significant relationship between the crimes the State charges and the ability of the defendant to defend himself. Due process requires that a defendant have adequate notice of the charges against him and sufficient time to prepare his defenses. Necessarily, the defendant gears his defenses to the allegations of the information and the bill of particulars. It is obviously impossible to defend adequately against charges which are not specified until the moment of instructing the jury, unless the charge is a lesser and clearly included offense. Under the Utah definition of a lesser included offense, there can be no unfairness to the defendant in giving a lesser included offense instruction because of lack of notice or preparation since no element may be included in the lesser offense that is not included in the greater offense. [Footnote omitted.]

If a homicide charge lesser than that charged in the information is included in the instructions at the instance of the prosecution, it may only be done upon the most careful and precise analysis of "all the facts required to establish the commission of the *offense charged,*" § 76–1–402, see *State v. Howell, supra,* and the conclusion that no facts beyond those necessary to establish the offense *as charged* are necessary to make out the lesser included offense; if additional facts are necessary to prove the lesser offense, a lesser included offense instruction may not be given even though such facts may be in the record because of the defendant's lack of opportunity to prepare to rebut those facts; and the giving of the instruction would not prejudice the defendant in presenting his proof or affirmative defenses. In a homicide case, however, where the differences between the lesser and greater offenses are simply in the characterization of the defendant's mental state—recklessness versus negligence, for example—an instruction on the lesser included offense should be given since it is the jury who are preeminently qualified and constitutionally charged to make such judgments, and decidedly not judges, either trial or appellate.

The majority in the instant case ignores these principles in determining, as a matter of law, that all criminal homicide cases constitute a lesser offense of a greater homicide offense. Furthermore, in determining when a lesser included offense instruction should be given, the Court states:

In the familiar circumstance where all the facts required to prove the commission of the lesser offense are included within the facts required to establish the commission of the offense charged (§ 76–1–402(3)(a)), the evidence that could serve as a basis for convicting of the greater offense could always serve as the basis for convicting of any lesser offense. If the jury were free to acquit of the greater offense and convict of any lesser offense simply because the lesser offense had been proved, this would allow the jury to preempt the prosecutor's function in charging offenses and the judge's function in imposing sentences. This is why an instruction on a lesser included offense (even one that must necessarily have been proved by the evidence on the charged or greater offense) is inappropriate unless there is a basis in the evidence upon which the jury could acquit of the greater offense and convict of the lesser offense.

That language seems to be an invitation to trial judges to intrude unconstitutionally on the prerogatives of the jury and on the constitutional right of a defendant to have his case decided by a jury and not a judge.

The Court's more solicitous attitude toward the "prosecutor's function in charging offenses, and the judge's function in

imposing sentences," than to a defendant's constitutional right to a trial by his peers evidences little deference to a fundamental constitutional principle. The right to trial by jury is almost always one of those rights that is the first to be dispensed with when free institutions perish. Of course, the majority's opinion does not go so far, but it is, nonetheless, in my view, an intrusion on that principle which should be resisted.

In addition, it is inappropriate to contend that allowing a jury to render a verdict on a lesser included offense, when it could also convict of a greater offense, somehow "preempts the prosecutor's function." That is not the case. The prosecutor made his charges long before the jury was ever empaneled. Furthermore, it must not be forgotten that on occasion prosecutors, despite the Code of Professional Responsibility, overcharge for the purpose of obtaining a favorable plea bargain. Indeed, I submit that there have been a number of cases which have been before this Court where it has been clear from the record that a prosecutor has, for example, charged second degree murder when in fact the defendant should have been convicted of manslaughter or criminal negligence.

The enshrinement of the right to a jury trial in our Constitution was based upon a centuries-long tradition of reliance upon juries to mitigate and counter any overreaching by the State. Since such has been our long tradition and our hard-won heritage, I would adhere to that view and emphatically hold that it is for the jury to decide, not an agent of the State, which of several closely related criminal offenses appropriately describes the acts committed by a defendant. However, the jury is preempted from performing that function if the judge may first "weigh" the evidence to decide whether the defendant should be acquitted of the charged offense before the judge gives the lesser offense instruction.

Nor is there a logical foundation for the majority's assertion that allowing a jury to decide which charge best fits the defendant's conduct somehow preempts a judge's function of sentencing. That function is to pronounce sentence on the crime proved and the verdict rendered.

I recognize that § 76-1-402(4) states that a court "shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." For the reasons stated in *State v. Baker*, I submit that subsections (3) and (4) of § 76-1-402 apply only to the prosecution. But if subsection (4) is construed to be applicable to both the prosecution and the defense, then that section must be construed to accord recognition to the clear-cut constitutional values at stake—most importantly the right to a jury trial.

It is preeminently the function of the jury to assess credibility; that is not a function of judges, trial or appellate. In most cases, therefore, the trial judge, in deciding whether to give a defendant's proposed lesser included instruction, will have to take into account the possibility that the jury may disbelieve the testimony relating to the additional element of the greater offense. Thus, for example, a charge of reckless homicide will almost always, if not always, require a lesser included offense instruction on criminal negligence if sought by the defendant. Essentially, the difference between the two is how one characterizes the state of mind of the defendant in determining whether he was reckless or negligent in performing a prohibited act, and that is a question which a jury ought to decide because there will always be a "rational basis" for acquitting on recklessness and convicting on criminal negligence. It is the kind of question that a group of persons supposedly representing a cross section of the community is better equipped to decide than is one person. In all events, the giving of a lesser included offense instruction no more interferes with the prosecutorial function of charging an offense, or with the judicial function of imposing sentence, than does the jury's right to acquit.

Finally, a 1980 amendment to the criminal code in effect requires the same con-

struction of subsection (4) that the Constitution requires. Section 77–17–1, Laws of Utah 1980, Ch. 15, § 2, provides: "When it appears the defendant has committed a public offense and there is reasonable doubt as to which of two or more degrees he is guilty, he shall be convicted only of the lower degree." Obviously, this section presupposes that a defendant could be convicted of a greater crime, and it also presupposes that a lesser offense instruction should, nevertheless, be given. For § 77–17–1 to have any effect, a trial judge must permit the jury to make a decision as to which of two or more degrees of a crime a defendant is guilty.

Finally, the majority states that in determining whether a lesser included offense instruction should be given at the behest of a defendant, the court must view the evidence and inferences that can be drawn from it in the light most favorable to the defense. *State v. Gillian*, 23 Utah 2d 372, 463 P.2d 811 (1970). I agree with that standard, as far as it goes. But the inquiry is not whether a *judge* thinks the defendant should, in fact, be acquitted, but only whether a reasonable *jury* could acquit on the greater charge and find guilt on the lesser charge. Furthermore, the standard stated by the majority does not deal with the all-important issue of credibility. I submit that a trial court, in addition to applying the test as stated above, must also assume that the jury may disbelieve that evidence necessary to prove the additional element or elements of the greater crime, unless it would be irrational to so do, as when that element is proved by physical evidence or stipulation.

The person who was most clearly responsible for the killing in this case was Thomas Garcia. In a separate suit, he was convicted of second degree murder—the same murder which is the subject of the instant action. However, the degree of culpability of the defendants in this case under the second degree murder statute is less clear than was Garcia's.

Although defendants' claims of innocence are hardly compelling, I think the evidence—which I shall not review—warranted an instruction on manslaughter. The jury deliberated some eleven hours; it must have had some doubts on critical points, at least as to one of the defendants. Indeed, the difference in the evidence of culpability in the Garcia case and the instant case may well have been the reason why Garcia and the defendants in the instant case were tried separately. I submit that the jury should have been given a manslaughter instruction and a choice between a second degree murder conviction and manslaughter conviction.

In my view, the defendants are entitled to be retried.