**2021 UT App 46**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ALBERTO HERRERA,
Appellant.

Opinion
No. 20190614-CA
Filed April 15, 2021

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 181904680

Nathalie S. Skibine, Elise Lockwood, and Nick
Falcone, Attorneys for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

SENIOR JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.[1]

APPLEBY, Senior Judge:

¶1     Alberto Herrera appeals his conviction of driving with a measurable controlled substance in the body and causing serious bodily injury or death. He argues that the district court erred when it denied his request to instruct the jury on several lesser included offenses. We affirm.

---

1. Senior Judge Kate Appleby sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2     One morning Herrera was driving a car more than ten miles per hour over the speed limit. As he reached over to pick up a sports drink from the center console, the car veered across the center line into oncoming traffic. The car collided, nearly head-on, with a pickup truck pulling a trailer loaded with heavy machinery. The collision sent both vehicles spinning off the road. Herrera suffered some broken bones, but his passenger ultimately died from her injuries. When police officers questioned him about the collision, Herrera explained that the car veered into oncoming traffic as he reached to get his drink. He also said it seemed that something may have been wrong with the alignment, but he did not know.

¶3     When officers searched the car to find the passenger's identification, they discovered methamphetamine and a marijuana pipe. A blood draw performed on Herrera revealed that the level of methamphetamine in his blood was higher than 1,000 nanograms per milliliter.[2] But the amount of methamphetamine could not be precisely determined because it exceeded the maximum the test could precisely ascertain.

¶4     Herrera was charged with several crimes, including the charge at issue here—negligently driving with a measurable controlled substance in the body and causing serious bodily injury or death. During the proceedings, Herrera asked the district court to instruct the jury on the lesser included offenses of automobile homicide, driving under the influence (DUI) with serious bodily injury, and DUI. The court denied the request, reasoning that these offenses had an impairment element "that is not overlapping with the charge in this matter." The jury

---

2. A toxicologist testified at trial that more than 200 nanograms per milliliter is a "toxic level" and an amount of 2,000 nanograms per milliliter can be lethal.

ultimately convicted Herrera on the controlled substance charge. Herrera timely appeals.

ISSUES AND STANDARD OF REVIEW

¶5    Herrera argues the district court erred by denying his request to instruct the jury on several lesser included offenses. "The refusal to give a requested jury instruction on a claimed lesser included offense is a legal determination, which we review for correctness." *State v. Simpson*, 904 P.2d 709, 711 (Utah Ct. App. 1995).

ANALYSIS

¶6    When determining whether another crime constitutes a lesser included offense of the charged crime, district courts employ different analyses depending on which party is requesting the lesser-included-offense instruction. A narrower standard is applied when the prosecutor requests a lesser-included-offense instruction. "[W]hen the prosecution seeks instruction on a proposed lesser included offense, both the legal elements and the actual evidence or inferences needed to demonstrate those elements must *necessarily be included* within the original charged offense." *State v. Baker*, 671 P.2d 152, 156 (Utah 1983). Thus, "no element may be included in the lesser offense that is not included in the greater offense." *Id.* (quotation simplified). This narrow standard serves to protect a defendant from having to defend against a crime for which he was not charged, as "his defense against the greater will, of necessity, be a defense against the lesser also." *Id.*

¶7    But when, as in this case, the defendant is the party requesting the jury instruction, what constitutes a lesser included offense is more expansive. In this situation, there must "exist some overlap in the statutory elements of allegedly 'included' offenses." *Id.* at 159; *see also* Utah Code Ann. § 76-1-

402(3)(a) (LexisNexis 2017) (defining an included offense as one "established by proof of the same or less than all the facts required to establish the commission of the offense charged").[3] "[W]here two offenses are related because some of their statutory elements overlap, and where the evidence at the trial of the greater offense includes proof of some or all of those overlapping elements, the lesser offense is an included offense . . . ." *Baker*, 671 P.2d at 159. This more expansive test "gives the defendant the benefit of the reasonable doubt standard" by giving the jury a third option between acquittal and conviction when proof of the charged crime is in dispute. *See id.* at 157.

¶8    Nonetheless, a district court is not required to honor a defendant's request to instruct the jury on a lesser included offense "unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Utah Code Ann. § 76-1-402(4). It is not enough that there is evidence supporting the lesser included offense, but that evidence must at the same time support an acquittal of the greater offense. "In determining whether there is a 'rational basis' for acquitting the defendant of the offense charged and convicting him of a lesser included offense, the court must, of course, view the evidence and the inferences that can be drawn from it in the light most favorable to the defense." *State v. Crick*, 675 P.2d 527, 532 (Utah 1983).

## I. Automobile Homicide

¶9    To determine whether automobile homicide is a lesser included offense in this case, we start by comparing the elements of that offense with the elements of the charged crime. Herrera's

---

3. Because the relevant portions of the Utah Code remain unchanged from those in effect at the time Herrera committed this crime, we cite the current version as a convenience to the reader.

charged crime under the Utah Controlled Substances Act required the State to show that while he "knowingly and intentionally ha[d] in [his] body any measurable amount of a controlled substance," he "operate[d] a motor vehicle . . . in a negligent manner, causing serious bodily injury . . . or the death of another." Utah Code Ann. § 58-37-8(2)(g) (LexisNexis Supp. 2020). The elements of automobile homicide are met when a person "is under the influence of . . . any drug . . . to a degree that renders the person incapable of safely operating a vehicle" and the person "operates a motor vehicle in a negligent manner causing the death of another." *Id.* § 76-5-207(2)(a) (2017). Because automobile homicide and the charged offense each include overlapping elements of operating a vehicle in a negligent manner and causing the death of another, automobile homicide constitutes a lesser included offense.[4]

¶10   But as discussed above, the district court is not required to instruct the jury on all lesser included offenses. Such an instruction is given only if "there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *Id.* § 76-1-402(4). Regarding automobile homicide and the controlled substance charge, the difference between the crimes is the element addressing what, precisely, must be proved relative to the level of drug present. The controlled substance charge

---

4. The district court denied Herrera's request for lesser-included-offense instructions because the impairment element included in each proposed lesser included offense is not an element of the charged controlled substance offense. Thus, it appears the court mistakenly applied the narrower evaluative standard required when a prosecutor is the party requesting the lesser-included-offense instruction. The State recognizes this likelihood on appeal and concedes that each of the crimes for which Herrera requested additional jury instructions were, indeed, lesser included offenses under the applicable standard.

required showing that Herrera "knowingly and intentionally ha[d] in [his] body any measurable amount of a controlled substance," *id.* § 58-37-8(2)(g), while automobile homicide would have required a showing that Herrera was "under the influence" of a drug, *id.* § 76-5-207(2)(a). Therefore, the district court was not obligated to give the automobile homicide jury instruction unless there was a rational basis for a jury to determine that Herrera was under the influence of methamphetamine but did not knowingly and intentionally have a measurable amount of it in his system.

¶11  Herrera argues there is evidence from which a jury could have inferred he was under the influence of methamphetamine, including "evidence of erratic driving," methamphetamine possession, and very high blood test results. But he fails to provide some interpretation of the facts under which there would be a rational basis for the jury to find both that he was under the influence of methamphetamine and that he did not knowingly and intentionally have a measurable amount in his system. *See State v. Baker*, 671 P.2d 152, 160 (Utah 1983) (focusing on whether "any of those alternative interpretations would provide *both* a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense" (emphasis added) (quotation simplified)). And we do not see any interpretation of the presented facts that would fit this requirement.

¶12  Indeed, Herrera recognizes that his driving, drug possession, and test results support the elements of both offenses. Yet he argues that because the lesser included offense is a "better fit" with the evidence presented, the jury had a rational basis to acquit him on the charged offense and convict him on the lesser offense. But this argument is contrary to both the established rule for a lesser-included-offense instruction, *see* Utah Code Ann. § 76-1-402(4) (LexisNexis 2017), and our case law addressing that rule:

> If the jury were free to acquit of the greater offense and convict of any lesser offense simply because the lesser offense had been proved, this would allow the jury to preempt the prosecutor's function in charging offenses and the judge's function in imposing sentences. . . . Instruction on lesser included offenses in that circumstance would confuse the jury as well as invite them to exceed their function.

*State v. Crick*, 675 P.2d 527, 532 (Utah 1983).

¶13    Herrera's argument emphasizes the "fundamental policy of permitting the jury to find a defendant guilty of any offense that fits the facts, rather than forcing it to elect between the charges the prosecutor chooses to file and an acquittal." *See State v. Hansen*, 734 P.2d 421, 424 (Utah 1986). But this concern arises only when the jury is confronted with a dilemma because it is unconvinced that the charged offense has been proved yet is certain that the defendant is guilty of some wrongdoing. *See id.* at 424–25 ("Where one of the elements of the offense charged remains in doubt but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." (quotation simplified)). Giving the jury a third option in such a situation protects the defendant by giving him the benefit of the reasonable doubt standard. *See Baker*, 671 P.2d at 157. And in such a situation, where there is a rational basis for the jury to have doubt on elements of the charged offense and yet certainty that elements of a lesser offense have been shown, the rational basis requirement for providing a lesser-included-offense instruction would be met.

¶14    But in a case such as the one before us, where there is no rational basis to acquit a defendant on the charged offense but convict of the lesser offense, the district court is not required to give the jury the opportunity to determine which of all the proven offenses best fits the facts of the case. "Although . . . the

jury has an inherent mercy-dispensing power as an inevitable consequence of the jury system, . . . the jury does not have the right to find a fact and then refuse to render the verdict which such a finding necessarily requires." *Crick*, 675 P.2d at 531 (quotation simplified). The jury may not acquit on the charged offense simply because it determines a more fitting offense exists, and the court should avoid giving an instruction "that would constitute an invitation to the jury to foreswear its duty and return a compromise or otherwise unwarranted verdict," *id.* (quotation simplified). The jury's function is not to determine which offense is the "best fit" when the facts meet the elements of multiple offenses and when there is not a rational basis to both acquit of the greater offense and convict on the lesser offense. In short, it was not error for the district court to refuse to give a jury instruction on automobile homicide.

## II. DUI with Serious Bodily Injury

¶15 Our analysis again starts with comparing the elements of the charged offense with those of the proposed lesser included offense. The elements of DUI with serious bodily injury are met when a person "is under the influence of . . . any drug . . . to a degree that renders the person incapable of safely operating a vehicle," *id.* § 41-6a-502(1)(b), and "the person has also inflicted serious bodily injury upon another as a proximate result of having operated the vehicle in a negligent manner," *id.* § 41-6a-503(2)(a). Both this offense and Herrera's controlled substance charge have overlapping elements of negligent driving and causing serious bodily injury, and thus, DUI with serious bodily injury constitutes a lesser included offense. But once again, the distinguishing element between the offenses is the precise level of drug involvement that must be shown—the charged offense requiring a measurable amount of drugs in Herrera's system and the lesser included offense requiring that Herrera was under the influence. And as we discussed above, there is no interpretation of the facts presented to the jury that would provide a rational basis for it to conclude that Herrera did not knowingly and

intentionally have a measurable amount of methamphetamine in his system but was under its influence. Therefore, we also see no error in the district court's refusal to instruct the jury on DUI with serious bodily injury.

### III. DUI

¶16 The elements of DUI are met when a person operates a vehicle while "under the influence of . . . any drug . . . to a degree that renders the person incapable of safely operating a vehicle." Utah Code Ann. § 41-6a-502(1) (LexisNexis Supp. 2020). This offense overlaps with Herrera's controlled substance charge because each offense includes the operation of a vehicle, and thus, DUI also constitutes a lesser included offense of the charged controlled substance offense.

¶17 As to whether there is a rational basis on which a jury could convict Herrera of this offense while acquitting him of the charged controlled substance offense, he argues that the jury rationally could have acquitted him on the controlled substance charge if it was unconvinced the State had proved that he drove negligently or that his negligent driving caused the collision—elements that are not required for the DUI offense. But even assuming that the rational basis test was met and it therefore was erroneous for the court to refuse to instruct on DUI, we are unconvinced that any such failure was harmful under the facts of this case. *See generally State v. Evans*, 2001 UT 22, ¶ 20, 20 P.3d 888 ("[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings. Put differently, an error is harmful only if the likelihood of a different outcome is sufficiently high that it undermines our confidence in the verdict." (citation omitted)).

¶18 Scant evidence in the record supports a determination that something other than Herrera's negligent driving caused the collision. Although Herrera argues there might have been some

malfunction in the car's alignment, the only evidence of this presented at trial was Herrera's post-collision explanation to officers that he thought maybe the car's alignment had a problem. No evidence other than Herrera's speculation supported the theory that an alignment malfunction caused the collision, nor was any evidence presented that alignment problems could suddenly cause the car to veer from its lane after it had maintained for some time its position in the appropriate lane of travel.

¶19 Furthermore, there was overwhelming evidence to support the jury's determination that Herrera's negligent driving caused the collision. The evidence shows that Herrera had been successfully keeping the car in its appropriate lane for some time before the collision, that he was speeding just before the collision, that he was reaching to pick up his drink just when the car veered, and that the level of methamphetamine in his system was extremely high. Indeed, for the jury to convict of the lesser included DUI offense, it would have to believe that Herrera was under the influence of methamphetamine "to a degree that render[ed him] incapable of safely operating a vehicle." *See* Utah Code Ann. § 41-6a-502(1)(b). It does not seem reasonably likely in such a case that a jury would determine that although Herrera was driving under the influence of methamphetamine, speeding, and had reached for his drink just as the car veered, that the hypothesized alignment issues were the true cause of the car suddenly veering into oncoming traffic. Thus, our confidence in the verdict is not undermined, and we determine that any error in failing to give a DUI jury instruction was harmless.[5]

---

5. Herrera also argues that the jury may not have believed that any negligent driving caused the passenger's serious injury or death, citing some evidence that the passenger may not have been properly wearing her seatbelt. But even assuming the passenger's seatbelt was not properly situated on her chest, we

(continued…)

CONCLUSION

¶20    We determine that the district court did not err in denying Herrera's request to instruct the jury on automobile homicide and DUI with serious bodily injury because there was no rational basis to acquit him of the charged offense while convicting him on either of these lesser offenses. And to the extent there was any error in the district court's refusal to instruct the jury on the DUI offense, we find any such error harmless under the facts of this case. We therefore affirm.

———————

(…continued)
are not persuaded that it is reasonably likely that the jury would have found that a misuse of the seatbelt, as opposed to the negligent collision, caused her to suffer serious bodily injury and death.